In re Tommye Lee HONAKER, Debtor.

**SECOND NATIONAL BANK OF SAGINAW, Plaintiff,**

v.

Tommye Lee HONAKER, Defendant.

Bankruptcy Nos. 79–00404, 80–0001.

United States Bankruptcy Court, E. D. Michigan, N. D.

June 10, 1980.

William S. Koepke, II, Koepke, Titus & Dill, Saginaw, Mich., for plaintiff.

Arthur J. Spector, Pergande, Shaw & Spector, Bay City, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

HARVEY D. WALKER, Bankruptcy Judge.

This matter came before the Court for trial on March 11, 1980, on the Complaint of Second National Bank of Saginaw, seeking to assert its rights as a secured creditor. The Complaint is sufficient to give the Defendant notice of the nature of the claim and the facts relied upon, although it technically should request relief from the stay rather than reclamation. To do substantial justice the Court will construe the Complaint as though the proper relief were requested. F.R.Civ.P. 8; Bankruptcy Rule 708.

This case arises out of three separate related transactions between the Bank and Tommye Lee Honaker, whereby monies were advanced to Honaker in exchange for promissory notes secured by two snowmo-

biles and a tractor.[1] Based upon the documentary evidence submitted, the Court finds that the Bank's security interest was duly perfected. Subsequent to the last of these transactions, Honaker filed a Petition under Chapter 13, on November 21, 1979. This Court ordered, on December 4, 1979, that all secured creditors must file proofs of their claims by the date of the Section 341 Hearing, on December 19, 1979, in order to be treated as secured creditors for purposes of voting and priority of distribution under the plan. On December 19, 1979, this Court ordered that pursuant to its earlier order, Household Finance Company would be deemed the only holder of an allowed secured claim for purposes of this case. The Bank filed a proof of its claim on January 7, 1980, and on January 16, 1980, the Bank filed its Complaint, referred to above.

▮ The first issue that must be resolved is whether the Bank has any rights to the collateral which are affected by the stay. The Defendant asserts that the Bank is now a mere unsecured creditor in all respects. This is clearly not so. This court has determined that the Bank will be treated as an unsecured creditor for purposes of voting and priority of distribution under the plan. However, the Bank still retains its lien upon the collateral, as can be seen from Section 506(d) of the Code.[2] (All references herein, unless stated otherwise, are to sections of the Bankruptcy Code: 11 U.S.C. § 101, et seq.)

▮ An objection under Section 502 is an adversary proceeding under Part VII of the Bankruptcy Rules, and requires the filing of a Complaint. Bankruptcy Rules 701 and 703. No such Complaint has been filed in this case, so even if the Bank had filed no proof of claim at all, its lien would still be unimpaired by the bankruptcy proceeding.[3]

The second basis relied upon by Defendant in opposing the relief sought is Code Section 1327.[4] This also avails him nothing. Section 1327 relates only to property of the estate, as defined in Sections 541 and 1306(a). In the instant case, Section 541(a)(1) is the operative portion.

By Section 541(a)(1) the estate was vested with the same interest in the collateral that the debtor had, that is, an interest subject

---

1. The security agreement in question also purports to cover collateral described as a "snowmobile trailer." The Court expresses no opinion as to the validity of the security interest with respect to this item of collateral, since it appears from the face of the security agreement that there may be a question regarding the sufficiency of the description thereof (M.C.L.A. § 440.9110, M.S.A. § 19.9110), which neither party has brief or argued.

2. "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—
(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or
(2) such claim was disallowed only under section 502(e) of this title."

3. The legislative history of Section 506(d) makes this clear. The language of the Code is the language of the original 506(d) which appeared in H.R.8200. A proposed Senate amendment would have required secured creditors with actual notice or knowledge of the case, to have their secured claims allowed in order to maintain their liens. S.Rep.No.95–989, 95th Cong., 2d Sess. (1978), 68, U.S.Code Cong. & Admin.News 1978, p. 5787. However the compromise bill, as passed by both Houses, reinstated the original version. *See,* 124 Cong. Rec. S. 17,411 (Oct 6, 1978). The result is to permit liens to pass through the bankruptcy case unaffected. House Rep. 95–595, 95th Cong., 1st Sess. (1977) 357 U.S.Code Cong. & Admin.News, 1978, p. 5787. *See also,* 3 Collier on Bankruptcy (15th Ed.), ¶ 506.07; *Hotel Associates, Inc. v. Trustees of Central States Southeast and Southwest Areas Pension Fund* (# 79–02203K), 1 Collier Bankruptcy Cases 733 (E.D.Pa., 1980).

4. 11 U.S.C. § 1327 reads as follows:
(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan."

to a valid security interest. There has been no action in this case to void or set aside the lien securing the Bank's claim. Then, by operation of Section 1327(b), that same interest is shifted again, this time from the estate back to the debtor. The question arises whether, by virtue of Section 1327(c), the debtor receives a greater interest than the estate had, in that the property is no longer subject to any liens. The language of Section 1327(c) is "free and clear of any *claim or interest*," (Emphasis Added). "Claim" is defined in the Code at Section 101(4). A "claim" is distinct from a "lien," which is defined in Section 101(28). The term "interest" is nowhere defined in the Code, but it would be odd if Congress had chosen that undefined term to mean "lien," when they could have used the defined term "lien" and avoided uncertainty. *Cf.* 5 Collier on Bankruptcy (15th Ed.), ¶ 1327.01. As one commentator has observed,

> ". . . there appears to be no sound reason for lifting liens by operation of law at confirmation under Chapter 13." 5 Collier on Bankruptcy, (15th Ed.), ¶ 1327.01, p. 1327–5.

The reading of Section 1327 urged by Defendant would have the Debtor materially improve his financial position, by unencumbering pledged assets, through the simple expedient of passing his property through the estate. This result has little to recommend it.

Therefore, the Court finds that the lien of the Bank upon the 2 snowmobiles and the tractor is not invalidated by the Chapter 13 proceedings herein, and now turns to the question of whether the automatic stay should be lifted. The issue is governed by Section 362(d).[5]

Under Section 362(g) the party opposing the relief has the burden of proof on all issues except the Debtor's equity in property. In this case it is apparent from the plan filed by the Debtor that no equity of the Debtor exists, or is claimed, in the collateral in question. No other grounds being found for denying relief from the stay, IT IS, THEREFORE, ORDERED that the stay be lifted to the extent necessary to allow the Bank to assert its non-bankruptcy remedies to recover the 2 snowmobiles and the tractor.

---

5. 11 U.S.C. § 362(d) reads as follows:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect *to a stay of an act against property, if—*

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."