**Alfred C. RICH, Jr.**

v.

**MARYLAND NATIONAL BANK.**

**Civ. No. K–83–3363.**
**Bankruptcy No. 82–1–1510.**

United States District Court,
D. Maryland.

June 30, 1984.

---

Thomas P. Smith and Shelly Mintz, Hyattsville, Md., for plaintiff.

George A. Lahey, Hyattsville, Md., for defendant.

Thomas Lackey, Trustee in Bankruptcy.

FRANK A. KAUFMAN, Chief Judge.

Debtor Alfred C. Rich, Jr., appeals from an August 18, 1983 Order of the Bankruptcy Court (Mannes, J.) granting the motion to lift of appellee Maryland National Bank (Maryland National) the automatic stay imposed by 11 U.S.C. § 362. Maryland National seeks to collect upon a debt growing out of debtor's purchase of a mobile home in September, 1978. The seller of the mobile home transferred its interests, in a conditional sales agreement with debtor and in a promissory note signed by the debtor, to Maryland National soon after the sale. In March, 1979, Rich fell into arrears in his payments to Maryland National. After unsuccessfully pursuing various other remedies, Maryland National, which had no security interest in the mobile home itself,[1] filed suit against Rich in the Circuit Court for Montgomery County. Summary judgment was granted by that Court in favor of Maryland National on June 22, 1982 for $20,040.68 plus attorney's fees in the amount of $3,006.10. In pursuance of and in enforcement of that judgment, Maryland National attached an indebtedness of approximately $35,000 which was owed to the debtor and his wife, Sharon Rich, by Phillip C. and Marilyn M. Pol-

ing.[2] Debtor's motion to quash that attachment, filed on September 14, 1982, has never been decided by the Circuit Court because of the stay imposed under 11 U.S.C. § 362 when Rich filed a chapter 13 petition in the Bankruptcy Court on October 1, 1982. In that bankruptcy proceeding, Maryland National did not file a proof of claim and did not object to the debtor's chapter 13 plan. Accordingly, the plan as confirmed by Order of the Bankruptcy Court, dated July 6, 1983, makes no provision for payment of Maryland National's claim. Furthermore, Maryland National did not file its motion for relief from the stay until June 1, 1983—that is, after the confirmation hearing held on May 2, 1983 at which the Bankruptcy Court indicated its intention to confirm debtor's amended plan.

There was considerable dispute below between the parties concerning the status of the Poling obligation to Rich which had been attached by Maryland National. Rich contended that the Poling note had been placed, with the consent of Rich's wife, into an irrevocable trust for the benefit of their daughter, that the trust agreement predated Maryland National's attachment, and that therefore the note was not reachable by Maryland National or any of Rich's other creditors. The trustee in bankruptcy, seemingly in at least partial agreement with Rich, concluded that the Poling note was not reachable by those creditors who had filed a proof of claim against the estate.[3] Maryland National took the position

1. "The vehicle was never titled, and no notice of lien or security interest was ever recorded." *In re Rich*, No. 82–1–1510, Adversary Proceeding No. 83–0488A, Memorandum of Decision at 1–2 (Bankr.D.Md. Aug. 18, 1983).

2. That debt was in the form of a note in an original sum of $36,000, the balance of which was, on May 28, 1982, $35,018.14. The note itself stated, in part: "FOR VALUE RECEIVED, we ... promise to pay to the order of FRED RICH and SHARON RICH ...." The note was secured by a mortgage which described the note "as payable to the order of Fred Rich and Sharon Rich, his wife." Subsequent to the signing of the note in November 1979 but prior to the attachment by Maryland National, debtor and his wife were divorced.

3. In his Supplemental Report, filed in the Bankruptcy Court on April 26, 1983, the trustee recommended confirmation of the amended plan and stated, in part:

That although the debtor resigned as Trustee for a sizeable Trust for the benefit of his child on the same day as his filing of the bankruptcy petition in this case and although there appears from the documents provided to the Trustee by Debtor's counsel that significant transfers of ownership interests in property of the Debtor occurred between one and two years prior to the filing of the case, it does not appear that any such property could be recaptured in a liquidation bankruptcy, and, therefore, the proposed plan which would provide for about a 15% disbursement to the unsecured creditors [is] in their best interests and

that the existence and/or validity of the trust agreement as against its attachment was a question to which there is not a clear cut answer and that a lifting of the stay would enable the appropriate forum, the Circuit Court for Montgomery County, to decide that issue.

Below, Judge Mannes concluded that there was sufficient "cause" under section 362(d)(1) to lift the stay and permit Maryland National to proceed in state court upon its judgment and attachment.[4] Maryland National's "lack of diligence" in filing for relief from the stay and in neglecting to file a timely proof of claim did not, Judge Mannes concluded, compel "a result that it take nothing," especially when "[t]he trustee has already abandoned [the Poling note] for the benefit of other creditors ...." Under such circumstances, Judge Mannes found "no harm done through the termination of the stay ...." *In re Rich,* No. 82–1–1510, Adversary Proceeding No. 83–0488A, Memorandum of Decision at 5 (Bankr.D.Md.Aug.18, 1983). On the basis of a "balancing of the equities," Judge Mannes concluded that the purpose behind the stay had lost its force "[i]n the unusual circumstances of this case where the only act enjoined is the prosecution of a claim against property that is not property of the estate ...." *Id.* at 6. Judge Mannes adopted the position of Maryland National that the question of the trust's purported superiority to the attachment could best be decided in the Circuit Court for Montgomery County.[5]

In the within appeal, debtor contends that the failure of Maryland National to file a proof of claim renders the Bank an unsecured creditor and invalidates its attachment upon the Poling note. Rich also argues that relief from the stay is unavailable after the confirmation of a chapter 13 plan. Finally, Rich contends that relief from the stay was not appropriate under the terms of section 362(d)(2)(B) because the Poling note is "necessary to an effective reorganization."

■ Debtor's argument that the failure to file a proof of claim invalidates the attachment is without merit. While there is seemingly no case law which concerns the effect of such a failure upon judicial liens, such as attachments, there are a number of cases relating to other types of liens which provide guidance herein. Those cases teach that the failure to file a proof of claim by a secured creditor may well affect some of the rights of the creditor under the chapter 13 plan but does not affect the validity of the lien held by such creditor. In *In re Honaker,* 4 B.R. 415 (Bankr.N.D. Ohio 1980), a bank which held a security interest in two snowmobiles and in a tractor belonging to the debtor filed a proof of claim beyond the time allocated for filing secured claims. The debtor contended that the bank was "now a mere unsecured creditor in all respects." 4 B.R. at 416. The Court rejected that argument, writing:

> This court has determined that the Bank will be treated as an unsecured creditor for purposes of voting and priority of distribution under the [chapter 13] plan. However, the Bank still retains its lien upon the collateral, as can be seen from Section 405(d) of the Code.

*Id.* (footnote omitted).[6] With regard to section 506(d) of the Code,[7] Collier states, in part:

is better than a liquidation bankruptcy would provide.

**4.** Section 362(d) provides:

On request of a party in interest and after notice of a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—

(1) for cause, including lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

**5.** *See In re* Rich, Memorandum of Decision at 2.

**6.** To similar effect are *In re Rhoades,* 34 B.R. 168, 170 (Bankr.D.Vt.1983); *In re Rebuelta,* 27 B.R. 137, 139 (Bankr.N.D.Ga.1983); *Matter of Willey,* 24 B.R. 369, 371–72 (Bankr.E.D.Mich. 1982); *Matter of Hines,* 20 B.R. 44, 47–48 (Bankr.S.D.Ohio 1982).

**7.** Section 506(d) provides:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

[T]he holder of a secured claim has greated protection with respect to his lien than he does with respect to the claim it secures. If he never becomes aware of the debtor's bankruptcy case ... his claim may nonetheless be discharged by reason of his failure to file a proof of claim. However, in order for his lien to be avoided, a party in interest must request that the court allow or disallow his claim. He would, of course, be entitled to "notice and a hearing" with respect to a request for disallowances.

3 Collier on Bankruptcy ¶ 506.07 at 506–49 (15th ed. 1983) (footnote omitted).

Debtor next contends that relief under section 362(d) is unavailable after a chapter 13 plan has been confirmed. The debtor relies on 11 U.S.C. § 1327(a) which states:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

In *In re Lewis*, 8 B.R. 132 (Bankr.D.Idaho 1981), the claim of the creditor who moved for relief from the stay was fully taken into account under the confirmed chapter 13 plan. That creditor also retained a valid lien upon the debtor's collateral. Under such circumstances, the Court interpreted section 1327(a) as providing that:

a creditor cannot [after confirmation] assert any other interest than that provided for him in the confirmed plan and that all of the issues of adequate protection, lack of equity, the fact that the property is not necessary for effective reorganization of debtor's affairs, etc., could and should have been raised in objections to

---

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2) such claim was disallowed only under section 502(e) of this title.

---

confirmation. The Court in *Lewis* concluded:

"The Order of Confirmation is thus res adjudicata as to all justiciable issues decided or which could have been decided at the hearing on confirmation."

8 B.R. at 137. However, the Court also wrote: "[i]t is thus apparent that Congress intended a chapter 13 debtor to have the protection of the stay during the term of the plan, *at least from creditors who are provided for in the plan." Id.* (emphasis added).

*In re Risser*, 22 B.R. 868 (Bankr.S.D.Cal. 1982), concerned a motion for a lifting of the stay by a creditor who had failed to object to the chapter 13 plan at the confirmation hearing. However, as in *Lewis*, the confirmed plan provided for the payment of the creditor's claim in full. The Court ruled that section 1327 precluded the creditor from attacking the plan under section 362(d): "[The language of section 1327] is sufficient to put all creditors on notice that objections to the plan must be made prior to confirmation." 22 B.R. at 870. Furthermore, the Court added that "once the plan is confirmed a § 362 complaint is not, in most cases, the proper procedural vehicle for attacking the plan."[8] *Id.* (footnote omitted).

In *In re Brooks*, 26 B.R. 210 (Bankr.W.D. Ky.1982), a creditor who had filed a proof of claim but had failed to file a timely objection to the confirmation of the chapter 13 plan sought to modify the stay on the grounds of inadequate protection. The Court denied the motion on its merits but did conclude that confirmation did not bar a motion under section 362(d):

Confirmation of a plan under Chapter 13 of the Bankruptcy Reform Act ... does not thereafter preclude, in the appropriate case, relief from the automatic stay provisions but in such instance in

---

8. *See also In re Evans,* 30 B.R. 530, 531 (Bankr. 9th Cir.1983); *In re Landers,* 28 B.R. 101, 106 (Bankr.N.D.Ala.1983); *In re Flick,* 14 B.R. 912, 918 (Bankr.D.Pa.Ct.1981).

order to prevail the plaintiff must establish appropriate grounds for the relief requested.

26 B.R. at 212. In *Honaker, supra,* a case in which the creditor who requested relief from the stay did not object to the confirmation, the Court also reached the merits of the motion to lift the stay and granted relief because the debtor had no equity in the property at issue. In *In re Morin,* 29 B.R. 606 (Bankr. D.Maine 1983), a case in which the creditor's claim was not provided for in the confirmed plan and in which the creditor seemingly filed no proof of claim, the court, after specifically referring to section 1327, stated that relief from the stay would be available if the creditor could fulfill the requisites for relief under section 362(d).

■■■ While the case law to date has not seemingly developed any bright line rule concerning when, after confirmation of a plan, a creditor may move for a modification of a stay under section 362(d), analysis of the case law indicates that the Bankruptcy Court made no error under the circumstances of this case in addressing the merits of Maryland National's motion. For instance, in *Lewis,* 8 B.R. at 217, the Court seems fully to have recognized a possible difference between creditors whose claims were provided for in the confirmed plan and those creditors whose claims were not provided for. In *Risser,* the court was concerned with what was "the proper procedural vehicle for attacking the [confirmed] plan." 22 B.R. at 870 (footnote omitted). In the instant case, the chapter 13 plan is not directly implicated because Maryland National is not provided for therein and because the property in question is not directly connected therewith. The question in this case is whether and to what extent Maryland National should be penalized for its "lack of diligence." Given the flexibility found by some courts to exist with respect to section 1327 and given the distinguishable circumstances of those cases in which courts have not found such

flexibility,[9] the answer to that question is best left to the discretion of the Bankruptcy Judge who has the opportunity to observe firsthand the conduct of the parties and to fashion an appropriate remedy. In the instant case, Judge Mannes recognized and considered the "roadblock" of section 1327 but did not conclude that it barred any and all relief under section 362(d). Under the circumstances, this Court cannot hold that that determination was erroneous.

■■■ The debtor's final argument, that the stay should not have been lifted because the property was "necessary to an effective reorganization," fails for two reasons. First, Judge Mannes lifted the stay under section 362(d)(1), not 362(d)(2). The former requires only a finding of "cause" to lift the stay and, unlike the latter, does not require any conclusion as to the importance of the property in question to the reorganization. Judge Mannes' finding of such "cause" is supported by the facts and by the applicable law. The "cause" standard is broad and extends beyond the concept of a lack of adequate protection mentioned in the statute. *See In re Regency Woods Apartments, Ltd.,* 686 F.2d 899, 902 (11th Cir.1982); *see also In re Comcoach,* 698 F.2d 571, 573 (2d Cir.1983); and 11 U.S.C. § 102(3) (rules of construction for Bankruptcy Code state that " 'includes' and 'including' are not limiting"). A decision to lift the stay, furthermore, is seemingly only reversable for an abuse of discretion by the bankruptcy judge "[s]ince the statute [362(d)] commits the decision of whether to lift the stay to the discretion of the bankruptcy judge." *Matter of Holtkamp,* 669 F.2d 505, 507 (7th Cir.1982). The legislative history of section 362(d) provides examples of situations which constitute "cause":

[A] desire to permit an action to proceed to completion in another tribunal may provide another cause [besides lack of adequate protection]. Other causes

9. In some of those cases, the creditor's interests have been recognized in the plan and the creditor's challenge has constituted an attempt to alter the provisions of the plan pertaining to it. Herein, the plan is silent as to Maryland National.

might include the lack of any connection with or interference with the pending bankruptcy case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 6300. In this litigation, Judge Mannes found it desirable to permit the Circuit Court for Montgomery County to decide the legal dispute at hand and concluded that the lifting of the stay would not interfere with the bankruptcy proceeding. Those findings have more than ample support in the record. Neither the trustee nor the debtor claim that the Poling note is the property of the estate. Furthermore, it appears that regardless of whether the property is or is not held in an irrevocable trust or is or is not subject to attachment, the debtor had no equity in the note at the time of the filing of the bankruptcy petition.[10]

Second, even if section 362(d)(2)(B) is applicable, debtor's contention that the property was "necessary to an effective reorganization" is not persuasive. With regard to that issue, section 362(g)(2) places the burden of proof on a debtor. The record reflects only conclusory assertions by Rich, both below and in submissions to this Court, that the seizure of the Poling note "would involve the Debtor in a further series of legal disputes as he would need to once again attempt to enter into another Property Settlement Agreement with SHARON RICH and re-distribute all properties held under the terms of the irrevocable trust agreement." Brief of Appellant at 12. The record also reflects that debtor was given ample opportunity to introduce

evidence or documentation in that regard and failed to do so.[11]

Accordingly, for the reasons discussed above, the judgment below is AFFIRMED.

---

**10.** The Poling note was seemingly held by the debtor and his wife as tenants by the entirety during their marriage. *See* record at docket #6. Upon their divorce in August 1981, the tenancy by the entirety was apparently converted into a tenancy in common. *See Hall v. Hall,* 32 Md. App. 363, 362 A.2d 648, 653 *cert. denied,* 278 Md. 723 (1976). Whether that property was held, after the divorce, in precisely equal shares or not, *see* 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 118 (1965), the debtor's share in the $36,000 note could hardly have been, at the time of the attachment or at the time of the filing of chapter 13 petition, much more than $18,000, an

amount considerably less than the judgment obtained against Rich by Maryland National.

**11.** At the hearing held below on August 8, 1983, Judge Mannes pointed out several times the inadequate documentation of debtor's claim that the Poling note was held in trust (*see* transcript at 5, 7–8, 29). Judge Mannes also gave the debtor an opportunity to supplement the record in this regard (*see* transcript at 8). However, in the end, Judge Mannes remained unconvinced of the existence and/or validity of the trust. *See In re* Rich, Memorandum of Decision at 2.