**In re Constance L. GLEASON, Debtor.**

**Bankruptcy No. 87–1900(13).**

United States Bankruptcy Court,
N.D. Alabama.

June 28, 1988.
As Amended Sept. 26, 1988.

Harry P. Long and Frank R. LaBudde, Anniston, Ala., for debtor.

Romaine S. Scott, III, Birmingham, Ala., for Alabama Power Co.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL ORDER

L. CHANDLER WATSON, Jr.,
Bankruptcy Judge.

*Introduction—*

The above-styled chapter 13 case is now before the Court for a final order upon the request by Alabama Power Company (here-inafter APC) for relief from the stay pro-vided by 11 U.S.C. § 362(a), by "terminat-ing the automatic stay and [granting] such

other and further relief as is just and proper." The Court assumes that APC seeks leave to enforce what it alleges is a security interest held by it in the debtor's Lennox heat pump, located at Route 1, Box 274, Jacksonville, Alabama. APC alleges that it holds a purchase-money security interest in the heat pump by virtue of a purchase contract executed by the debtor, that APC was owed under the contract, as of January 21, 1988, the sum of $3,774.00, and that payments under the contract are in default. The debtor objects to the motion, this matter has been taken under advisement, and counsel for APC have submitted a brief, which the Court has duly considered.

*Findings of Fact—*

■ The facts relating to this controversy are not in dispute, are mostly procedural, and the Court, on its own motion, will take judicial notice of the matters appearing of record from the case file maintained by the clerk of the bankruptcy court, in order to facilitate a disposition of this matter. The Court finds the facts as follows:

1. The debtor instituted this bankruptcy case by a petition filed under title 11, chapter 13, United States Code, on March 3, 1987, and the case remains pending under that chapter;

2. Notwithstanding a provision in part of the debtor's chapter 13 plan "to pay in full all allowed claims," the plan recited that it was "a composition plan," and it clearly appeared that the debtor's proposed 260 weekly payments to the trustee would provide substantially insufficient funds with which to pay in full allowed unsecured claims, if all creditors holding unsecured debts timely filed proofs of their unsecured claims;

3. The debtor's plan also provided that "[t]he holder of each filed and allowed secured claim shall retain the lien securing such claim until the claim is satisfied under the plan or the debt is otherwise satisfied" and that allowed secured claims be paid in full, in installments by the trustee, with an added interest factor of 8% [per annum?];

4. The debtor's plan provided an exception for two debts (one owed to Mid–State Homes, Inc., and the other to Commercial Credit), alleged to be secured by the debtor's home, which were to be paid directly by the debtor, rather than through the standing chapter 13 trustee;

5. The clerk of the bankruptcy court mailed to the creditors an order and notice and a copy of the chapter 13 plan, on March 5, 1987, which recited the bar date of June 30, 1987, for the filing of claims in the case; [1]

6. In accordance with the notice from the clerk, a confirmation hearing was held before the bankruptcy court on July 28, 1987, at which the debtor offered to modify her plan so as to provide for payments of $145.00 per week to the trustee rather than payments of $87.00 per week as originally proposed;

7. The chapter 13 trustee had objected to confirmation of the plan on the ground that the debtor had offered insufficient funds with which the allowed secured claims were to be paid by the trustee, but due to the failure of APC and certain other creditors to file proofs of claim it was found at the confirmation hearing that $145.00 per week would be sufficient to afford full payment not only of allowed secured claims (with an installment-payment compensation factor) but also all allowed unsecured claims; whereupon, the trustee withdrew the objection to confirmation, and there being no objection by any party, the plan was confirmed by the Court;

8. The bankruptcy court's order confirming the plan, entered July 29, 1987, included provisions that the debtor pay the sum of $145.00 each week to the trustee "until all allowed claims are paid in full," that "[t]he holder of each allowed secured claim provided for by the plan shall retain such creditor's interest in the property of the debtor(s) which secures the claim, until such claim has been satisfied," and that "property of the estate shall not vest in the debtor(s) until a discharge is granted under

1. Bankr. Rule 3002(c).

said Chapter 13 or this case is dismissed out of Court";

9. Neither the plan nor the order confirming it contained any provision that the debtor would not remain in possession of the property of the estate, and, for aught that appears from the file, the debtor is maintaining the payments required by the confirmed plan and is in the process of consummation of the plan in due course;

10. On September 17, 1987, APC filed a motion by which it sought to have the Court extend the time for filing proofs of claim in this case, so as to permit it to file proof of its claim in the sum of $4,361.87, which it tendered with the motion;[2]

11. Although APC did not appear at the hearing on confirmation of the debtor's plan and conceded that it had been duly scheduled as a creditor in the debtor's Chapter 13 Statement and duly notified by the clerk of the filing of the debtor's petition and of related matters, APC contended that it had failed to file a proof of claim timely because it had changed attorneys who were handling this matter and that there would be no prejudice to anyone from permitting it to make a late filing of its proof of claim; but at a hearing held September 15, 1987, upon APC's motion, the Court noted the provisions of Bankruptcy Rules 3002(c) and 9006(b)(3) and concluded that it was unnecessary for the Court to consider the sufficiency of the grounds stated in the motion because the Court was without authority to amend the Bankruptcy Rules, which forbade extending the time during which this creditor was permitted to file a proof of its claim; and by an order dated September 17, 1987, and entered by the clerk October 1, 1987, the motion of APC was denied by the Court.

12. On February 1, 1988, APC filed a motion for relief from the automatic stay provided by 11 U.S.C. § 362(a) by having the Court terminate the stay [with respect to APC's alleged security interest in the debtor's "Lennox" heat pump], in which request, APC alleged an indebtedness owed by the debtor to it in the sum of $3,774.00, as of January 21, 1988, secured by a securi-ty interest in the debtor's "Lennox" heat pump, that no payment on the debt had been made since February, 1987, that the debtor had "not provided for the payment of the indebtedness ... in her plan," and that the creditor had not been given or offered adequate protection of its interest in the property;

13. The motion by APC for relief from the stay came before the Court for a hearing on February 16, 1988, at which the debtor's counsel referred the Court to the provisions of 11 U.S.C. §§ 1327 and 1306(b), and after an extensive argument by the creditor's counsel and an indication from the Court that it was going to deny the motion, a ruling on the motion was withheld at the request of APC's attorney, in order to permit him to file a brief (which has now been filed);

14. At the hearing on February 16, 1988, in connection with its request for the Court to delay a ruling on the § 362(d) motion, APC filed a consent to a continuance in effect of the stay, pending the further order of the Court; and

15. In order to prevent an unintended lifting of the automatic stay, the Court entered an order continuing this stay in force, pending the further order of the Court [and, inadvertently, entered a similar order on February 22, 1988].

*Conclusions by the Court—*

The debtor does not deny that APC was owed a substantial debt or that the debt was secured by a valid security interest held by APC in the debtor's heat pump. The value of the collateral was neither alleged nor proved, but no related issue was raised, and the Court assumes that the heat pump has a substantial value.

■ In its brief, APC realleges that the debtor "while listing the indebtedness in the schedules of her petition, did not provide for payment of APCo's claim in her Chapter 13 Plan." Absurd as this contention might appear, APC is not alone in

---

**2.** Bankr. Rule 9006(b)(3).

having asserted it.[3] The contention boils down to the proposition that if a debtor offers a chapter 13 plan to make periodic payments to a chapter 13 trustee, who shall, in turn, pay *allowed claims* of the creditors in the case, this plan does not "provide for payment" of a debt owed to a creditor whose proof of claim is not timely filed and is thereby barred. What should be the plain and obvious fact is that such a debtor "did provide for payment" of such a creditor's debt in the context and framework of a bankruptcy case but that such a creditor failed to avail itself of the debtor's provision for payment by not complying with the *Rules of Bankruptcy Procedure*, adopted by the Supreme Court and having the imprimatur of the Congress. This Court has discussed and totally rejected such a contention in a recent adversary proceeding: *Thomas v. SouthTrust Bank of Alabama, N.A.*, 85 B.R. 608 (Bankr.N.D. Al.1988).

The argument for such a proposition is advanced when a creditor who has failed to take advantage of the opportunity for payment of its debt through a chapter 13 plan finds itself bound by the terms of a confirmed plan,[4] with the time for filing a notice of appeal from the confirmation order of the bankruptcy court having expired. The argument is specious because it rests upon the premise that (1) the holder of a debt secured by a lien on the debtor's property has an undefeatable right to ignore the entire bankruptcy process created by act of Congress [5] and (2) thereby thrust upon a debtor the burden of providing in a reorganization or debt-adjustment plan alternately for payment of the debt if a proof of claim is duly filed or for payment in the event that none is filed. If that were so, the debtor, presumably, would have to pay directly to the nonfiling creditor the debt according to the terms of an applicable security agreement. The debtor who could

do that as to each debt would have absolutely no need for a chapter 11, 12, or 13 case, except—arguably—as a net in which to snare unsophisticated creditors who might recklessly file proofs of their claims. Certainly, no remedial relief for distressed debtors would have been afforded—as widely supposed—by congressional enactment of chapters 11, 12, and 13 of the Bankruptcy Statute. Such a proposition would enshrine section 1322(b) [6] as a cruel joke, with its provisions which purport to enable a debtor to "modify the rights of holders of secured claims" [7] or to "provide for the curing or waiving of any default." [8]

Creditors without allowed claims, however, continue to press their tardy claims as being protected from misadventure by the provisions of section 506(d).[9] While the Court has recently dealt with this contention in the *Thomas* case and ought not to write to the point each time it is raised, some response by the Court should be made to the authorities cited in the brief filed for APC.

Most such creditors—as does APC—rely upon the early opinion found in *In re Honaker*, 4 B.R. 415 (Bankr.E.D.Mi.1980). Since *Honaker* appears to be the cornerstone for the creditor's position, it will be appropriate to quote from that opinion at length:

This Court ordered, on December 4, 1979, that all secured creditors must file proofs of their claims by the date of the Section 341 Hearing, on December 19, 1979, in order to be treated as secured creditors for purposes of voting and priority of distribution under the plan. .... The Bank filed a proof of its claim on January 7, 1980, .....

... This court has determined that the Bank will be treated as an unsecured creditor for purposes of voting and priority of distribution under the plan. How-

---

**3.** *In re Case,* 11 B.R. 843 (Bankr.D.Ut.1981).

**4.** 11 U.S.C. § 1327(a).

**5.** This supposed right—it is claimed—was recognized by Congress in 11 U.S.C. § 506(d), despite United States Constitution, Art. I, § 8, cl. 4—perhaps because of Amendment V.

**6.** 11 U.S.C. § 1322(b).

**7.** *Id.* (b)(2).

**8.** *Id.* (b)(3).

**9.** 11 U.S.C. § 506(d).

ever, the Bank still retains its lien upon the collateral, as can be seen from Section 506(d) of the Code.[2]

An objection under Section 502 is an adversary proceeding under Part VII of the Bankruptcy Rules, and requires the filing of a Complaint. Bankruptcy Rules 701 and 703. No such Complaint has been filed in this case, so even if the Bank had filed no proof of claim at all, its lien would still be unimpaired by the bankruptcy proceeding.[3]

. . . .

By Section 541(a)(1) the estate was vested with the same interest in the collateral that the debtor had, that is, an interest subject to a valid security interest. ... [By] operation of Section 1327(b), that same interest is shifted again, this time from the estate back to the debtor. The question arises whether, by virtue of Section 1327(c), the debtor receives a greater interest than the estate had, in that the property is no longer subject to any liens. The language of Section 1327(c) is "free and clear of any *claim* or *interest,*" (Emphasis Added). "Claim" is defined in the Code at Section 101(4). A "claim" is distinct from a "lien," which is defined in Section 101(28). The term "interest" is nowhere defined in the Code, but it would be odd if Congress had chosen that undefined term to mean "lien," when they could have used the defined term "lien" and avoided uncertainty. Cf. 5 Collier on Bankruptcy (15th Ed.), ¶ 1327.01. As one commentator has observed,

> "... there appears to be no sound reason for lifting liens by operation of law at confirmation under Chapter 13." 5 Collier on Bankruptcy, (15th Ed.), ¶ 1327.01, p. 1327-5.

The reading of Section 1327 urged by Defendant would have the Debtor materially improve his financial position, by unencumbering pledged assets, through the simple expedient of passing his property through the estate. This result has little to recommend it.

. . . .

[2] "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or (2) such claim was disallowed only under section 502(e) of this title."

[3] The legislative history of Section 506(d) makes this clear. The language of the Code is the language of the original 506(d) which appeared in H.R. 8200. A proposed Senate amendment would have required secured creditors with actual notice or knowledge of the case, to have their secured claims allowed in order to maintain their liens. S.Rep. No. 95-989, 95th Cong., 2d Sess. (1978), 68, U.S. Code Cong. & Admin. News 1978, p. 5787. However the compromise bill, as passed by both Houses, reinstated the original version. See, 124 Cong. Rec.S. 17,411 (Oct 6, 1978). The result is to permit liens to pass through the bankruptcy case unaffected. House Rep. 95-595, 95th Cong., 1st Sess. (1977) 357 U.S. Code Cong. & Admin. News, 1978, p. 5787. See also, 3 Collier on Bankruptcy (15th Ed.), ¶ 506.07; *Hotel Associates, Inc. v. Trustees of Central States Southeast and Southwest Areas Pension Fund* (# 79-02203K) [3 B.R. 343], 1 Collier Bankruptcy Cases 733 (E.D.Pa.1980).

4 B.R. at 416-17.

Should *Honaker* be accepted at face value, for its somewhat hallowed status?[10] The answer is: "no." Aside from procedural matters rendered archaic by the subsequent 1983 Bankruptcy Rules and a flavor of impreciseness,[11] the whole thrust of the decision misses the significant difference between a chapter 7 liquidation case and a case under one of the special relief chapters of the bankruptcy statute. *Honaker* and cases which cite it approvingly do not understand the difference between the role, relief, and powers given by Congress to a chapter 7 debtor and those given by Congress to a debtor in a chapter 11, 12, or 13 bankruptcy case.

In a chapter 7 liquidation case, the debtor's role is to give information to the creditors and the trustee and to cooperate with the trustee in the liquidation of the estate.[12] The principal relief granted to the

**10.** *Cf. In re Simmons,* 765 F.2d 547 (5th Cir. 1985) (quoting *Honaker* with approval, at 555).

**11.** *Cf.* "Section 341 Hearing," 4 B.R. at 416; 11 U.S.C. § 341.

**12.** *Cf.* 11 U.S.C. §§ 521, 704; Bankr. Rule 4002.

individual chapter 7 debtor is the discharge,[13] which frees the debtor from personal liability for the listed debts [14] (with possible exceptions [15]). The individual debtor's power to claim property as exempt from the estate may or may not grant more relief to such a debtor than do the exemption statutes of the state of domicile of the debtor.[16] Property exempted to the individual debtor in a chapter 7 liquidation case is not subject to a prepetition debt, except a debt secured by a lien which is not voided under § 506(d) or avoided under other sections of title 11. The chapter 7 individual debtor may, under § 722,[17] redeem from a lien securing a dischargeable consumer debt, exempt, "tangible personal property intended primarily for personal, family, or household use ... by paying the holder of such lien the amount of the allowed secured claim ... ." Bankruptcy Rule 3004 permits (but does not require) a debtor or trustee to file a proof of claim for a creditor who does not do so by the first date set for the meeting of creditors provided for by § 341(a).[18] There is no indication in the statutes that the payment to the lien holder may be anything but a full, cash payment at the instant of redemption.[19]

Further, § 522(f) gives the individual chapter 7 debtor the power to "avoid the fixing of a lien" upon exempt property of the debtor, if "a judicial lien," [20] and to a limited extent if a consentual lien. As an aside, it should be noted that such avoided liens do not "pass through the bankruptcy case unaffected"—notwithstanding § 506(d).

In a chapter 7 liquidation case the application of the provisions of § 506(d)—either in its original version or its present version —and those of Bankruptcy Rule 3002 appears to be straightforward. The debtor's property either is exempted from the estate by the debtor, or the trustee in bankruptcy sells or abandons the property. Most of what is said in opinion and text about § 506(d) can be applied to a chapter 7 liquidation case without offense to the congressional purposes stated in other sections of the bankruptcy statute. There is the exception mentioned above, being § 522(f), but I do not find anyone saying that § 522(f) is in conflict with § 506(d) and doesn't mean what it says, or is offensive to the holding in Long v. Bullard, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), or is without "sound reason," or produces a "result [that] has little to recommend it."

There does not appear to be anything above, on the face of, or under the earth to lead to the conclusion that an unchallenged lien is avoided or lost in a chapter 7 bankruptcy case, for the sole reason that the lien holder did not timely file a proof of claim in the case, and the present version of § 506(d) seems plainly so to state. That conclusion shifted to the setting of a chapter 11 reorganization case, however, appears to have been the holding of the two lower courts reviewed in Matter of Tarnow, 749 F.2d 464 (7th Cir.1984), upon which APC places some reliance. There, Judge Posner quite correctly delineated the proposition that the mere untimeliness of the filing of a proof of claim in the case did not "extinguish" that creditor's consentual lien on the debtor's equipment, citing Long v. Bullard. Indeed, Long v. Bullard stands for no more than that the discharge in bankruptcy of the debtor there and the setting apart to him of a homestead as exempt "did not relieve the property from the operation of liens created by contract before the bankruptcy," even though the creditor did not "prove his debt in bankruptcy."

In Honaker, above quoted from, the relations between the debtor and the creditor, the property subject to the creditor's claim, and the bankruptcy statutes went beyond

---

**13.** 11 U.S.C. § 727.

**14.** 11 U.S.C. § 524.

**15.** 11 U.S.C. § 523.

**16.** 11 U.S.C. § 522.

**17.** 11 U.S.C. § 722.

**18.** 11 U.S.C. § 341(a).

**19.** *E.g. In re Harp,* 76 B.R. 185 (Bankr.N.D.Fl. 1987).

**20.** Defined in 11 U.S.C. § 101(32).

the straightforward proposition set out in *Tarnow* and in *Long v. Bullard.* The bank filed a complaint against Honaker, which the Court construed as a request for relief from the stay provided by § 362(a),[21] and asserted a security interest in the debtor's two snowmobiles and a tractor. The bank's proof of claim had been filed late and the debtor's chapter 13 plan had been confirmed.[22] Upon the debtor's objection to the request, the court purported to deal with two separate issues, stating "[t]he first issue that must be resolved is whether the Bank has any rights to the collateral...."[23] The court there dealt with the basic *Bullard—Tarnow* proposition and correctly concluded that the creditor had not waived its lien by tardiness in filing its proof of claim.[24]

The second aspect of the opinion in *Honaker* dealt with the debtor's reliance upon § 1327,[25] in opposing leave to the bank to enforce its security interest in the debtor's property, and on this issue the failure of the court to consider the basic differences between a chapter 7 liquidation bankruptcy and cases under the special-relief chapters led to confusion, resulting in an erroneous conclusion that a basic conflict exists between the provisions of § 506(d) and § 1327. Here are set forth the provisions of each:

11 U.S.C. § 506

§ 506. Determination of secured status.

.    .    .    .    .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 1327

§ 1327. Effect of confirmation.

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

What the court in *Honaker* and the court in *In re Simmons,* 765 F.2d 547 (5th Cir. 1985), upon which APC places principal reliance, failed to take into account is the substantial difference between the chapter 7 liquidation case and a case under chapter 11, 12, or 13. In the latter types of cases,

---

**21.** 11 U.S.C. § 362(a).

**22.** That the debtor's chapter 13 plan had been confirmed by the court is not stated but is implicit in its discussion of 11 U.S.C. § 1327, for that section deals with and is titled: "Effect of confirmation."

**23.** 4 B.R. at 416.

**24.** Apparently the bar date on secured claims was considered to be a date fixed in an order of the court, rather than a date calculated under the provisions of former Chapter XIII Rule 13–302(e)(1). See 4 B.R. at 416. But see *Matter of Willey,* 24 B.R. 369 (Bankr.E.D.Mi.1982) (Bobier, J.) (applying Chapter XIII Rule 13–302(e)(1)). It should be noted that prior Rule 13–302(e) provided that a proof of claim not filed "before the conclusion of the first meeting of creditors" was not to be "treated as a secured claim for purposes of voting and distribution," but the rule provided that unsecured claims must be filed "within 6 months after the first date set for the first meeting of creditors." Thus, the same proof of claim, if filed before conclusion of the first meeting of creditors and if establishing a secured debt, would be allowed as a secured claim for voting and distribution purposes but, if filed later and within six months after the meeting, it would be allowed but only as an unsecured claim. This treatment contrasts with that under present Bankruptcy Rule 3002(c), which simply provides that, in a chapter 7 or 13 case, "a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code...."

**25.** 11 U.S.C. § 1327.

liquidation of the debtor's property is not the norm. In those types of cases, it is contemplated that a plan of reorganization or adjustment of debts will be proposed, will be considered by the creditors and the court, and will be confirmed by the court if that is permitted or required by the applicable statute. There are detailed procedures and tests to be applied in the confirmation process in a chapter 11, 12, or 13 case, culminating in the court's consideration of a plan under § 1129, § 1225, or § 1325,[26] as applicable. Basically, congressional purpose is to permit distressed debtors an opportunity to obtain financial rehabilitation without a liquidation of nonexempt property, and the principal tool provided is the debtor's opportunity (in most instances) to modify or impair the rights of creditors, whether holding secured or unsecured claims. And, finally, there is the effect of confirmation, set out in § 1141, § 1227, or § 1327.[27] All of this is above and beyond the simplicity of the chapter 7 liquidation case, in which a creditor's lien may receive no scrutiny by the court, if, for example, the trustee abandons the property, after no party requests a hearing.[28] The courts in *Honaker* and *Simmons* do not appear to comprehend the major differences mentioned above, and in the resulting confusion mistake the question before the court to be *the effect of a failure to file a proof of claim* or to file a timely proof of claim. Although the courts in these two cases appear to be fixed upon this issue, yet they realize that the effect of confirmation of a plan in a chapter 13 case must be taken into account, because there § 1327 is—in plain sight. From this plain of dilemma, a conclusion is reached that there must be some conflict between the provisions of § 506(d) and § 1327, that the former is more appealing, and that the meaning must be read out of § 1327. In the confusion, the somewhat obvious fact that each section has its own purpose and field of operation is lost.

In the process, the court in *Honaker* is led to say that § 1327 "relates only to property of the estate," that "the estate was vested with the same interest in the collateral that the debtor had," that this "interest [is] subject to a valid security interest," and that "by operation of Section 1327(b), that same interest [of the debtor in the collateral] is shifted again, this time from the estate back to the debtor."[29] This statement, of course, takes no account of powers of debtors or trustees to avoid liens and writes out of the bankruptcy statutes the provisions which Congress placed there for the *effect of confirmation* of a plan in a chapter 13 case. It is plainly inappropriate for the court to quote a text to the effect that "there appears to be no sound reason for lifting liens by operation of law at confirmation under Chapter 13." While such a comment is within the province of the treatise writer, an inquiry into the "sound reason" for the plain meaning of § 1327(c) is not within the province of a court not confronted with a plain and obvious conflict between the two statutory provisions. The "sound reason" element was, constitutionally, for the Congress to determine. The court, however, finds an ambiguity in the use of the word "interest" in § 1327(c) rather than "lien," which is defined in § 101(33).[30] From this the court erroneously concludes that, when the statute provides that the property vesting in the debtor "is free and clear of *any claim or interest of any creditor* provided for by the plan," this does not mean free of a *lien.* (emphasis added). That conclusion fails to take account of the fact that the statutory definition of "lien" states that the word "means charge against or *interest* in property to secure payment of a debt...." (emphasis added). All in all, *Honaker* must find its ultimate fame in the realm of appealing or seductive language rather than for logic and statutory construction and application, because, if there really were a conflict between § 506(d) and 1327(c), the latter specific statute would

---

26. 11 U.S.C. §§ 1129, 1225, and 1325.

27. 11 U.S.C. §§ 1141, 1227, and 1327.

28. 11 U.S.C. § 554.

29. 4 B.R. at 416–17.

30. 11 U.S.C. § 101(33).

govern in a chapter 13 case over the more general § 506(d).[31]

As may be obvious, the citation of *Honaker* by APC is not a citation directly on point in the instant case, because the vesting of property in the debtor under the provisions of § 1327(b) was suspended by a provision in the Court's order of confirmation, and, therefore, the lien-shedding effect of § 1327(c) is entirely a perspective matter rather than one presently before the Court. But the language of *Honaker* is the music heard by creditors in predicaments such as that in which APC now finds itself, having failed to file a timely proof of its claim.

As was true in *Honaker*, it is inappropriate in *Simmons* for the Court to quote and approve of the treatise opinion cited in *Honaker* to the effect "that there appears to be no sound reason for lifting liens by operation of law at confirmation under chapter 13,"[32] since the soundness of the congressional reason was not properly an issue for the court to decide. Inclusion of the provisions of § 1327 in chapter 13 (or of similar provisions in chapters 11 and 12) may be criticized by scholars or creditors as unwise but cannot be attributed to congressional misprision, as may be demonstrated by provisions in § 1325(a)(5)[33] for the protection of nonassenting holders of *allowed* secured claims. One of the requirements there for confirmation of the plan is that "the plan provides that the holder of such claim retain the lien securing such claim." It, likewise, is inappropriate in *Simmons* for the court to become a party's advocate by asserting: "[i]t would be anomalous indeed were we to permit Simmons a windfall for his mischaracterization of Savell's claim in the plan as unsecured."[34] That, of course, was not the question presented in the case, but whether

Savell was bound by the terms of the confirmed plan of Simmons.

The court in *Simmons* satisfied itself that recent support for its conclusions could be found in Judge Posner's writings in *Tarnow*,[35] but as earlier pointed out such reliance was misplaced because the court in *Tarnow* dealt with the effect of the untimely filing of a proof of the creditor's claim, not with the effect of confirmation of a plan of reorganization or adjustment of debts. By way of conclusion, the court in *Simmons* stated: "[t]o hold that confirmation of Simmons' repayment plan had the effect of dissolving Savell's statutory lien ... would require us to ignore the rule or *Long v. Bullard* and to read section 506(d) out of the Code....."[36]

As must be clear from the earlier discussion of *Long v. Bullard,* no ignoring of the rule of that case would have resulted, because the rule of that case is the same rule as in *Tarnow.* Furthermore, there would have been no reading of § 506(d) out of the statute because no conflict exists between the provisions of that section and those of § 1327. It thus appears that the reading of § 1327 out of the statute should have been the Court's concern.

The opinion in *Long v. Bullard* was handed down in 1886. At that time there was no Chapter XIII type case. This type of case was introduced by the "Chandler Act" in 1938.[37] In § 657,[38] Chapter XIII provided that after "confirmation ... the plan ... shall be binding upon the debtor and all creditors." The statute stated that this binding effect was to take place whether or not such creditors "are affected by the plan or have accepted it or have *filed their claims,* and whether or not their claims have been scheduled or allowed or are allowable." (emphasis added). Present § 1327 was introduced in the Bankruptcy

---

**31.** *Thomas v. SouthTrust Bank of Alabama, N.A.,* 85 B.R. 608 (Bankr.N.D.Al.1988).

**32.** 765 F.2d at 555.

**33.** 11 U.S.C. § 1325(a)(5).

**34.** 765 F.2d at 555–56.

**35.** 765 F.2d at 556.

**36.** 765 F.2d at 559.

**37.** Chandler Act, Ch. 575, 52 Stat. 840 (June 22, 1938).

**38.** Formerly, 11 U.S.C. § 1057.

Reform Act of 1978.[39] It would be among the strangest things, if *Long v. Bullard* announced a fairly-obvious rule which is incorporated in present § 506(d) and yet, somehow, that rule is contrary to § 1327, applicable to an entirely different kind of bankruptcy case and enacted at the same time as § 506(d) and about 90 years after announcement of the *Long v. Bullard* rule.

As with *Honaker*, the citation by the creditor of *Simmons* is not a citation of a case directly on point, for we are not dealing here with the vesting of property free and clear of liens, under subsections (b) and (c) of § 1327 but with the binding effect upon APC of confirmation of Ms. Gleason's chapter 13 plan, as that effect is set out in subsection (a).

In conclusion here, the court turns back to the contention that APC was not "provided for by the plan" and thereby escapes the binding effect of Ms. Gleason's confirmed plan. What APC says is that the plan did *not provide* for the payment of the debt owed to it in the event that—as has occurred here—it failed to file a timely proof of claim and thereby does not hold an *allowed* claim in the case. Unlike chapter 11, with the provisions of § 1111(a)[40] applicable to cases under that chapter, there is no provision in chapter 13 for the *allowance* of a claim different from allowance under § 502(a), which requires that a proof of claim be filed by the creditor—or under certain circumstances, filed for the creditor—as provided in § 501. Under the notion advanced by APC, it should be held that chapter 13 is unconstitutional for want of due process in *not providing* for APC now to object to the confirmed Gleason plan, disregarding APC's failure to object to the plan before its confirmation or to take a timely appeal from the confirmation order. If it would be inappropriate to characterize the proposition advanced by APC as ridiculous, it is sufficient to say that it is contrary to the holding in or view expressed in *In re Gregory*, 705 F.2d 1118 (9th Cir.1983); *Richards v. United States*,

50 B.R. 339 (E.D.Tn.1985); and *In re Brown*, 27 B.R. 771 (Bankr.N.D.Il.1983); as well as the view and holding of this Court.

■ If, however, the argument by APC that it was *not provided for* by the Gleason plan were taken seriously, this hypothesis does not afford a basis for granting to APC relief from the § 362(a) stay. Subsection (a) of § 1327 provides that *each creditor is bound* by the provisions of a confirmed plan "whether or not the claim of such creditor is provided for by the plan." In § 101(4), it is stated that " 'claim' means ... [among other things] right to payment"; thus, "claim" is broader than the technical term "allowed claim." It is only after one reaches subsection (c) of § 1327 that the words "creditor provided for by the plan" are encountered. That subsection, of course, only deals with the divesting of a "claim or interest" in property of the estate vesting in the debtor under the provisions of subsection (b). APC fails to differentiate between a case in which the vesting in the debtor of property of the estate has occurred and the present case where it has not. Its argument is irrelevant because the binding effect of the Gleason plan, under subsection (a), is not subject to the condition precedent in subsection (c). Whatever troubles may be in store for APC under subsection (c) are entirely prospective at the present stage of this case.

The views expressed by the court in *Simmons* are at least weakened and may have been abandoned by the Fifth Circuit, considering its views and holding in the more recent *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987); *accord Matter of Lewis*, 8 B.R. 132 (Bankr.D.Id.1981). The holding in *Republic* is that a provision in a confirmed chapter 11 plan is binding upon a creditor, being *res judicata*.

■ Ms. Gleason's plan provided that the debt which she owed to APC was to be paid from the funds which she proposed to de-

---

**39.** Pub.L. No. 95–598 (1978).

**40.** 11 U.S.C. § 1111(a). A proof of claim is "deemed filed under section 501" if the debt is

scheduled in a chapter 11 case, unless scheduled as "disputed, contingent, or unliquidated."

posit periodically with the standing chapter 13 trustee, not that the debt was to be satisfied by a seizure of her heat pump by APC. Because APC is bound by the terms of her confirmed plan, it is incapable of asserting any right to relief from the stay under § 362(a) for the purpose of permitting it to proceed contrary to or inconsistent with the provisions of Gleason's plan. In accordance with the foregoing, a final order denying the request of APC is appropriate.