MEMORANDUM OPINION
 

 FRANK W. KOGER, Bankruptcy Judge.
 

 FACTS
 

 Lewis Edgar and Teddy Sue Hydorn (hereinafter “Debtors”) filed a Petition for Relief under chapter 13 of the U.S. Bankruptcy Code (hereinafter the “Code”) on April 7, 1987. As reported by Debtors on their Schedule of Debts, dated June 16, 1987 and filed with Debtors’ Chapter 13 Plan (hereinafter the “Plan”), Debtors owed the Commerce Bank of Oak Grove $72,835.29. Evidencing this debt is a Promissory Note, dated July 15, 1987, and signed by Debtors, in the principal amount of $70,000.00 with interest due thereon in monthly installments at a rate of 12.5% per annum (hereinafter the “Note”).
 

 
 *610
 
 The collateral securing this indebtedness, through a duly recorded Deed of Trust, is two tracts of real property located in Oak Grove, Missouri (Jackson County). One parcel is commercial property (hereinafter “Tract I”) and the other is Debtors’ personal residence (hereinafter “Tract II”). Bank’s lien on Tract I represents a first lien on that property while Bank’s lien on Tract II is a third lien against that property. According to Debtors’ Schedule of Debts, the aggregate debt secured by the first and second liens on Tract II totals $12,090.06. This same Schedule states that the fair market values of Tract I and Tract II are $82,000.00 and $75,000.00, respectively.
 

 Debtors’ Plan provides for payment in full of the second mortgage on Tract II followed by payment of 100% of all claims filed and allowed. The Plan makes no express provision for Bank’s claim other than a remark on the Schedule of Debts that “Debtors desire return of the property in lieu of debt thereon”. Pursuant to the Trustee’s Motion filed on September 7, 1987, this Court ordered that the following claims pertinent to the instant dispute be deemed allowed or disallowed:
 

 Description of Claim Amount Allowed Percentage of Claim to be Paid
 

 1. 1st Lien on Tract II
 
 Wo
 
 O O ¡O '60*
 

 2. 2nd Lien on Tract II 100% 05 05
 
 rA
 
 o CO
 

 3. Bank’s Claim 0% CO
 

 to 05 to
 

 (classified as secured) (surrendered Tract I)
 

 No modifications to the Plan affecting the above amounts or the dischargeability of Debtors’ indebtedness to Bank have been made. This Court confirmed the Plan on June 16, 1987, without any appeals or objections having been filed by Bank.
 

 Acknowledging that the value of Tract I was less than the indebtedness and that Debtors had no equity in the property, the parties entered into a Stipulation For Abandonment and Relief From Automatic Stay (hereinafter the “Stipulation”). Pursuant to the Stipulation, this Court approved of the Chapter 13 Trustee’s abandonment of Tract I and ordered the automatic stay lifted to allow Bank to foreclose on its lien on Tract I. The Order does does not provide for cancellation of the debt or avoidance of Bank’s lien upon Debtors’ surrender of Tract I.
 

 The probable result of Bank’s eventual sale of Tract I is that a deficiency will exist on Bank’s claim against Debtors. Bank has communicated to Debtors that Bank will enforce its lien against Tract II to recover the balance due on the Note. Debtors have surrendered Tract I to Bank but, to date, Tract I has not been sold nor has its fair market value been appraised. In spite of this fact, Debtors filed a Proof of Claim on March 14, 1988 (approximately
 

 10 months after the § 341 creditors meeting was held on May 20, 1987) for $3,000.00 on Bank’s behalf, representing the yet unknown deficiency to be satisfied through Bank’s lien on Tract II. As in their Schedule of Debts, Debtors stated in this Proof of Claim that the fair market value of Tract II was $75,000.00. An Order from this Court made on March 22, 1988 allowed this claim as filed. Bank subsequently filed a Proof of Claim on May 19, 1988 for the entire balance due on the Note of $73,-246.72, which consisted of $66,503.84 in principal and $6,742.88 in matured and unpaid interest due on the principal through April 7, 1987. Bank stated in its Proof of Claim that the combined fair market values of the two tracts securing the debt was $115,000.00.
 

 On July 7, 1988, the Trustee filed his Final Report and Accounting. Under this Accounting, Bank received $3,125.00 pursuant to the above Court Order (principal payment of $3,000.00 plus interest thereon of $125.00). Finding the Plan complete, this Court approved the Accounting on July 26,1988, discharged Debtors from all debts provided for in the Plan, and granted all creditors an opportunity to object. In protest of any discharge of the indebtedness
 
 *611
 
 under the Note, Bank filed an Objection to Discharge on August 8, 1988.
 

 In its objection, Bank states that Tract I had been listed with a real estate broker since January 1988 and that the current listing price as of that date was $54,000.00. In a subsequent Stipulation of Facts proposed and signed by Bank but in which Debtors did not join, Bank claims that a contract for sale of Tract I with contingencies had been entered into which if performed would leave a deficiency on the Note in excess of $20,000.00. A copy of this contract could not be found in the Court’s file and Debtors claim no knowledge of any such contract.
 

 Debtors’ Schedules and Bank’s Proof of Claim each state sufficient value in the combined properties (Tract I and Tract II) to secure the full amount due Bank. Because Tract I has not been sold, however, and because neither party has moved for a determination by the Court as to the value of Bank’s secured claims on Tracts I and II, any deficiency remains unascertained. As a result, the amount of Bank’s lien on Tract II, if it has survived the bankruptcy is unknown.
 

 Bank is asking this Court to deny Debtors a discharge and to hold the bankruptcy open until Tract I is sold in order that the deficiency may be determined and the Plan modified to provide for regular payments to Bank on the debt secured by Tract II. Bank argues that discharging the debt will cause it to receive less under the Plan than the allowed amount of its claim in contravention of § 1325(a)(5). Debtors filed a Response and a Motion To Dismiss Bank’s Objection to Discharge. In these documents, Debtors point out that in addition to returning the property pursuant to the Stipulation, Debtors filed a Proof of Claim for the deficiency which this Court allowed and Debtors paid, and that Bank did not file a timely claim or objection with respect to this deficiency payment. Debtors further state that their Chapter 13 Plan was filed in good faith and that they have paid 100% of all debts provided for therein without objection. For all of the foregoing reasons, Debtors claim that they qualify for a Chapter 13 discharge.
 

 QUESTIONS PRESENTED
 

 1. Whether Bank’s claim and lien against the collateral securing the Note survived confirmation of Debtors’ Plan and subsequent discharge of all debts provided for under the Plan.
 

 2. If Bank’s claim and/or lien survived the Plan’s confirmation and subsequent discharge of all debts provided for therein, how should the values of Tracts I and II be determined under the applicable Code provisions and what should those estimated values be in light of the purpose of the valuation and the proposed disposition or use of the properties.
 

 DISCUSSION
 

 I.
 
 Status of Bank’s Claim and Underlying Lien
 

 To understand the analysis of this case and the conclusion reached by this Court, an understanding of the codal structure involving the allowance and disallowance of claims, plan confirmation, and discharge of debts is necessary. The Court begins by noting that first Debtors and then Bank filed Proofs of Claim related to the same underlying debt but both after the Plan was confirmed. Section 501(a) of the Code permits a creditor to file a proof of claim. No creditor is required to file a proof of claim and one should only be filed where some purpose would be served. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 351 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 61 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Highly relevant to this case is the apparent rule under Bankruptcy Rule 3002(a) that a secured creditor need not file a proof of claim, unless it is disputed, contingent or unliqui-dated. 8 Collier on Bankruptcy § 3002.03(2) 15th Ed.1988. Filing may be necessary, however, where, for example, a creditor with a lien is undersecured and asserts a claim for the balance of the debt owed him,
 
 Id.,
 
 or where a request has been filed to determine the secured status of a
 
 *612
 
 claim under § 506 and allowance or disal-lowance under § 502. Bankr.R. 3002 (1987) advisory committee’s note (1983) (“A secured claim need not be filed or allowed under § 502 or § 506(d) unless a party in interest has requested a determination and allowance or disallowance under § 502”.); see
 
 In re Simmons,
 
 765 F.2d 547, 551 (5th Cir.1985).
 

 As to the time for filing, Bankruptcy Rule 3002(c) requires the filing of a proof of claim in a Chapter 13 case within 90 days after the first date set for the creditors’ meeting held pursuant to § 341. Claims requiring filing and not specifically excepted under the rule must be filed within the fixed time period. 8 Collier on Bankruptcy § 3002.05(1) 15th Ed.1988. A court has no equitable power to extend the time prescribed under the rule and courts uniformly hold that no extensions may be granted after the specified time period has passed.
 
 In re Ryan,
 
 54 B.R. 105, 106 (E.D.Pa.1985). Should a creditor fail to file a timely proof of claim, § 501(c) of the Code, as implemented by Bankruptcy Rule 3004, allows the debtor to file on the creditor’s behalf. 11 U.S.C. § 501(c) (1987). Bankruptcy Rule 3004 delineates timeliness as it is referred to in § 501(c) and provides for filing any time between the first date set for the § 341 creditors’ meeting and 30 days after the bar date fixed in Bankruptcy Rule 3002 or 3003(c). 11 U.S.C. § 3004 (1987).
 

 Even though a debtor has filed a proof of claim pursuant to Bankruptcy Rule 3004, the creditor may file its own provided it complies with the Bankruptcy Rules. The last sentence of Bankruptcy Rule 3004 provides that “[a] proof of claim filed by a creditor pursuant to Rule 3002 or Rule 3003(c) shall supersede the proof filed by the debtor ...” Thus, the creditor’s claim must be filed before the bar date. Bankr.R. 3004 (1987) advisory committee's note. Otherwise, a debtor’s claim filed pursuant to Bankruptcy Rule 3004 will stand. 8 Collier on Bankruptcy § 3002.03 (15th Ed.1988).
 

 The evidentiary effect of a proof of claim is set forth in Bankruptcy Rule 3001(f) which provides that a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes
 
 prima facie
 
 evidence of the validity and amount of the claim. Once a creditor files its claim, the burden shifts to the debtor to object to the value of the creditor’s stated claim to defeat the prima facie connotation of the claim’s validity and amount.
 
 In re Bus-man, 5
 
 B.R. 332, 340 (E.D.N.Y.1980).
 

 Applying the above protocol for filing a proof of claim, it is noted that neither party in this case filed a timely claim.
 
 [1]
 
 Given the events preceding confirmation of Debtors' Plan, however, it seems that such untimeliness was of no meaningful consequence to the ultimate rights and obligations of the parties. As previously observed, at the Chapter 13 Trustee’s request, Bank’s claim was ordered allowed as secured by this Court for the entire balance due under the Note. The determination of a claim’s allowability is a judicial act that is within the exclusive province of the bankruptcy judge.
 
 In re Palombo Farms of Colorado, Inc.,
 
 43 B.R. 709 (D.Colo.1984); see 3 Collier on Bankruptcy § 502.02 (15th Ed.1988). The status of the Bank’s claim under the Code was thereby established for
 
 *613
 
 the remainder of the bankruptcy proceeding. Because Bank’s claim was determined fully secured, it did not need to file a proof of claim to preserve a claim for any unsecured deficiency. Once Debtors’ Plan was confirmed without appeal or objection by the Bank, it represented a binding determination of the rights and liabilities of the parties as provided for in the Plan. 11 U.S.C. § 1327(a); 5 Collier on Bankruptcy § 1327.01(1) (15th Ed.1988). In addition, even though Bank failed to file a timely proof of claim, such failure could only harm itself.
 
 In re Tarnow,
 
 749 F.2d 464, 466 (7th Cir.1984) (untimely claim leaves secured creditor with claim against collateral as distinct from claim against bankrupt estate). A theme that necessarily is repeated in the analysis of this case is that a secured creditor with an allowed claim need not file to protect his lien.
 
 Clem v. Johnson,
 
 185 F.2d 1011, 1012 (8th Cir.1950); see also
 
 In re Bradshaw,
 
 65 B.R. 556, 557-58 (M.D.N.S.1986). This phenomenon is the next focus of the discussion.
 

 There is one final point to make concerning the claims filed in this case before taking up the parties’ chief arguments. Upon ordering Bank’s claim allowed as secured, this Court was satisfied from the available evidence that Debtors’ interest in the combined values of the collateral (Tracts I and II) were sufficient to meet Bank’s claim, thereby qualifying it as fully secured. A determination made on these grounds as to the extent of the secured status of Bank’s claim was both adequate and necessary to proceeding with the bankruptcy. What would have been far more efficient and preferable is for one of the parties to have requested this Court, at or before the confirmation hearing, to make a numerical determination as to the estimated value of the collateral pursuant to 11 U.S.C. § 506. This determination of value remains to be made and is the subject of the second part of the opinion below.
 

 Turning the discussion now to the effect of confirmation of Debtors’ Plan and noting that the determination as to a claim’s “allowability” is a prerequisite to plan confirmation and dictates the survival and subsequent treatment of a secured creditor’s claim (and lien if any) against collateral securing that claim. Before a plan may be confirmed, it must meet the criteria of § 1325(a). Section 1325(a)(5) sets forth one of six prerequisites to plan confirmation addressing the treatment of allowed secured claims under Chapter 13. To qualify for confirmation under § 1325(a)(5), the plan must provide, with respect to each
 
 allowed secured claim provided for by the plan
 
 that
 

 (A) the holder of such claim has accepted the plan;
 

 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;
 
 or
 

 (C) the debtor surrenders the property securing such claim to such holder ...
 

 11 U.S.C. § 1325(a)(5) (1987).
 

 Before the analysis can reach the question of the impact of Confirmation of Debtors’ Plan on Bank’s claim in this case, the Court must determine whether the indebtedness in dispute is an “allowed secured claim provided for by the plan” as defined under § 1325(a)(5). Having established that Bank’s claim is allowed and fully secured, we can examine the extent to which Bank’s claim and corresponding lien have been “provided for” in Debtors’ Plan as that term is used in § 1325(a)(5). The term “provided for by the plan” is not defined in the Code or in its legislative history. Sufficiently clear, however, is its intended meaning which indicates that a Chapter 13 plan may modify the rights of a holder of a secured claim. 5 Collier on Bankruptcy § 1325.06(2)(b) (15th Ed.1988). The Code does not define the term “provide”. Nevertheless, the Code uses terms in their ordinary sense unless otherwise specifically defined in § 101.
 
 In re Rhoades,
 
 34 B.R. 168, 169 (D.Vt.1983). To the extent that Debtors’ Plan deals with or refers to Bank’s claim, it “provides” for Bank’s claim for purposes of confirmation as well as discharge under § 1328(a).
 
 Law
 
 
 *614
 

 rence Tractor Co. v. Gregory,
 
 705 F.2d 1118, 1122 (9th Cir.1983).
 

 Debtors’ Plan lists the debt as secured and states that “Debtors desire surrender of property [Tract I] in lieu of the
 
 debt
 
 thereon”. Debtors’ Plan makes no provision, however, proposing to avoid Bank’s
 
 lien
 
 against Tract II, although this may have been its intent. Similarly, the Stipulation entered into between the parties and approved by this Court prior to confirmation of the Plan makes no provision for retention or release of Bank’s lien. Noteworthy, however, is the fact that the Court’s Order with respect to this Stipulation, lifted the automatic stay and authorized Bank to
 
 foreclose its liens
 
 against Debtors’ real estate as set forth in the Stipulation. In any event, Debtors’ Plan was properly confirmed pursuant to § 1325(a)(5) since the Plan, together with the Stipulation, sufficiently “provided for” Bank’s secured claim pursuant to § 1325(a)(5)(C), which Debtors satisfied by surrender of Tract I. In stating this the fact that neither the Plan or the Stipulation provide that the Bank was to accept Tract I in full satisfaction of the entire claim is ignored, nor the fact that neither document called for surrender of the remaining collateral, Tract II. Furthermore, if it can be assumed for a moment that the Bank is correct in its assertion that the proceeds from the eventual sale of Tract I will yield an amount below the value of its allowed secured claim, the Plan will not have provided for payment of an amount equal to Bank’s security. But Bank can take solace in the principle that if a plan does not provide for payment to the creditor in an amount equal to the creditor’s security, the lien securing the debt, i.e., the creditor’s right to the value of the security, survives the Chapter 13 discharge.
 
 In re Bradshaw,
 
 65 B.R. 556, 559 (M.D.N.C.1986).
 

 Only now then is it possible to attend to the key issue of this case which is what is the combined effect of the Plan’s confirmation, surrender of the yet unsold collateral (Tract I), and Chapter 13 discharge on Bank’s claim and underlying liens? The descent upon this issue begins with 11 U.S. C. § 1327 which describes the effect of confirmation and provides that:
 

 (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
 

 (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
 

 (c) Except as otherwise provided for in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is
 
 free and clear of any claim or interest
 
 of any creditor
 
 provided for by the plan.
 

 11 U.S.C. § 1327 (1987) (emphasis added).
 

 What Debtors have broadly stated is that they want a discharge from those debts that were not provided for and subsequently satisfied either through the Plan or through the Stipulation. More specifically, Debtors are asking, in effect, to find that their surrender of Tract I to Bank fully satisfied their debt to Bank and that confirmation of their Plan pursuant to § 1327, and subsequent discharge under § 1328 somehow lifted or extinguished the liens against the collateral securing that debt. The response to Debtors’ position arises from explanation of what § 1327 does and does not do with respect to the claims of secured creditors who have perfected liens securing the underlying debt.
 

 Several other Bankruptcy Courts have considered the wording of § 1327 and its meaning. In an early case,
 
 In re Honaker,
 
 4 B.R. 415 (E.D.Mich.1980), the court specifically addressed the meaning of § 1327(b) and the meaning of “property of the estate”. In
 
 Honaker,
 
 a secured creditor filed its claim late. As a result, debtor argued that the plan as confirmed was binding upon the creditor, thereby permitting debtor to retain the property free and clear of the creditor’s claim as well as its lien upon the property.
 

 The
 
 Honaker
 
 Court noted that § 1327 relates only to “property of the estate” as defined in § 541(a)(1) and § 1306(a).
 
 Id.
 
 at
 
 *615
 
 416. Under § 541(a)(1), the Court observed that the bankruptcy estate becomes vested with an interest no greater than the debt- or’s, that is, an interest subject to a valid security interest.
 
 Id.
 
 The Court emphasized that neither the trustee or the debtor had made an attempt to avoid or set aside the lien securing the bank’s claim. Thus, upon confirmation of the plan, § 1327 operated to revest that same interest in the debtor — an interest still subject to the lien.
 
 Id.,
 
 see also
 
 In re Levine,
 
 45 B.R. 333, 337-38 (D.C.1984) (§ 1327 does not free revested property of liens). The
 
 Honaker
 
 Court specifically queried whether “by virtue of Section 1327(c), the debtor receives a greater interest than the estate had, in that the property is no longer subject to any liens”. 4 B.R. at 417. Noting that the language of § 1327 is “free and clear of any
 
 claim or interest”,
 
 and that the Code defines “claim” in § 101(4), the Court pointed out that a “claim” is distinct from a “lien”, which is defined in § 101(28).
 
 Id.
 
 Although the Code does not define the term “interest”, the
 
 Honaker
 
 Court reasoned that “it would be odd if Congress had chosen that undefined term to mean “lien”, when they could have used the defined term “lien” and avoided uncertainty”.
 
 Id.
 

 In concluding that § 1327(c) did not require invalidation of the secured creditor’s lien due to the late filing, the Court in
 
 Honaker
 
 further stated that to permit such a reading of § 1327 would allow the “debt- or to materially improve his financial position, by unencumbering [secured] assets, through the simple expedient of passing his property through the estate. This result has little to recommend it”.
 
 Id.
 
 The destruction of an otherwise valid lien is also considered an exceedingly harsh sanction for a default that can only hurt the defaulter and is not necessary to protect anybody’s interests.
 
 In re Tarnow,
 
 749 F.2d at 465-66. The rule has, in fact, been long established that a “creditor with a loan secured by a lien on assets of a debtor who becomes bankrupt before the loan is repaid may ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt”.
 
 Id.
 
 at 465 (referring to a line of cases headed by
 
 Long v. Bullard,
 
 117 U.S. 617, 620-21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886)).
 

 Congress codified the above rule in 1984 in § 506(d)(2) which provides that:
 

 (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—
 

 (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
 

 (2) such claim is not
 
 an allowed secured claim
 
 due only to the failure of any entity to file a proof of such claim under section 501 of this title. 11 U.S.C. § 506(d)(2) (1978) (emphasis added).
 

 This provision’s legislative history states that “[sjubsection (d) permits liens to pass through the bankruptcy case unaffected”. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 357 (1977), U.S.Code Cong. & Admin.News 1978, p. 6313. If, however, “a party in interest asks the Court to determine and allow or disallow the claim secured by the lien under Section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed”.
 
 Id.
 
 Thus, if the Court determines that a creditor does not have a valid secured claim, the lien falls with the claims.
 
 In re Tarnow,
 
 749 F.2d at 466.
 

 As already observed, however, the Bank’s claim was determined by this Court to be an allowed secured claim. Neither Debtors’ Plan or the parties’ Stipulation provide for extinguishing of the debt or invalidation of the underlying lien. Further, no action has been brought in an attempt to invalidate Bank’s lien. The Court finds that Bank’s claim at confirmation of Debtors’ Plan was an allowed secured claim and that Bank’s lien securing the underlying debt survived confirmation and passed through bankruptcy.
 

 II.
 
 Effect of Chapter 13 Discharge on Bank’s Claim and Bank’s Request for Modification of Plan
 

 From the record before us in this case, the Court is unable to discern any
 
 *616
 
 grounds for denying Debtors a discharge pursuant to § 1328. Debtors have completed all payments of all debts provided for by the plan in accordance with § 1328(a). Further, there is no evidence or allegations that debtor is seeking to obtain discharge through fraudulent means which would later justify revocation of the discharge under § 1328(e). Thus, Bank’s Motion to Postpone or Suspend Debtors’ Discharge is DENIED.
 

 In the same breath, however, that Bank’s Motion to Postpone Debtors’ Discharge is denied, Debtors must be apprised that Bank’s lien against Tract II will survive discharge. For this reason, there may be practical economic reasons why Debtors may not want to rush to discharge and may seek modification. Bank’s enforcement of its lien against Debtors may mean eventual foreclosure and sale of Tract II with Debtors receiving the balance of the sale proceeds left after all liens against Tract II have been satisfied. The Court does not apprehend that this is what Debtors want, and suspect that they would prefer to retain Tract II.
 

 Thus, the Court calls Debtors’ and the Trustee’s attention to the fact that prior to any Order of Discharge from this Court, either of them may request a modification to the Plan consonant with § 1329 to provide for an alternative means of satisfying Bank’s lien against Tract II. Although Bank has made such a request, Bank is not a proper party to request modifications to the Plan under § 1329(a) which provides in pertinent part that “[a]t any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debt- or, the trustee, or the holder of an allowed unsecured claim ...” 11 U.S.C. § 1329(a).
 

 III.
 
 Valuation of Collateral
 

 The basic Code provision governing the determination of an allowed claim’s secured status is 11 U.S.C. § 506. Section 506 provides in pertinent part that:
 

 (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... or is a secured claim to the extent of the value of such creditor’s interest in such property ... and is an unsecured claim to the extent that the value of such creditor’s interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor’s interest. 11 U.S.C. § 506(a) (1987).
 

 Section 506 determines the extent to which an allowed claim is a secured claim and entitled to the protections of § 1325 in a Chapter 13 plan. A debt is secured only to the extent of the value of the collateral. Since this Court has determined that the combined values of Tracts I and II are sufficient to qualify Bank’s claim as fully secured, the purpose of determining the values of these properties would be twofold: (1) to determine the extent to which Bank’s claim is satisfied through the surrender of Tract I and the amount of any deficiency; and (2) to determine whether the value of Tract II is sufficient to satisfy the estimated deficiency from valuation of Tract I.
 

 All guidance for the valuation of collateral appears in the second sentence of § 506(a). As this provision’s legislative history notes, no fixed formula exists for establishing such value. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 356 (1977), U.S. Code Cong. & Admin.News 1978, p. 6312. “Courts will have to determine value on a case-by-case basis, taking into account the' facts of each case and the competing interests in the case”.
 
 Id.,
 
 see also
 
 Barash v. Public Finance Corp.,
 
 658 F.2d 504, 512 (7th Cir.1981). Because Congress intended for the concept of value to be flexible, the standards by which security interests are to be valued are controversial.
 
 In re Claeys,
 
 81 B.R. 985, 990 (D.N.D.1987).
 

 CONCLUSION
 

 Although Debtors and Bank each filed untimely claims, Bank’s perfected, lien against the collateral securing the underlying debt will pass through the bankruptcy
 
 *617
 
 and remain enforceable as a secured claim against collateral to the extent of its determined value. Debtors or the Chapter 18 Trustee, may move to modify the Plan to provide for payment of this deficiency. Bank is not a proper party under § 1329(a) to request a modification. If no such modification is sought, this Court shall issue an Order of Discharge pursuant to § 1328 and Bank shall be free to foreclose on its lien against that property. Since Debtors have otherwise completed all payments provided for by the Plan in accordance with § 1328(a), the Bank’s Motion to Suspend Debtors’ Discharge will be DENIED.
 

 This Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.
 

 SO ORDERED this 30 day of December, 1988.
 

 [1]
 

 . Although the Code and the Bankruptcy Rules forbid the Court from granting filing extensions on equitable grounds, the Court may not be entirely powerless to authorize extensions under certain circumstances. Specifically, we find a modicum of support from case law under the "Old Rules”, however, for our view that as long as a plan conforms to the requirements of 11 U.S.C. § 1325 as to the payment of value to secured creditors, either the debtor or the creditor should be allowed to file a claim even after plan confirmation, since any such filing does not then affect distributions to other creditors.
 
 In the Matter of Hines,
 
 20 B.R. 44, 48 (S.D. Ohio 1982). Because, we find that Debtors’ Plan conforms to the requirements of § 1325, and Bank that holds an allowed secured claim, we conclude that the parties’ post-confirmation filings did not adversely affect Debtors or their other creditors. The Value Bank seeks from its secured interest in Tract II is no greater than what it would be entitled to had it filed a timely proof of claim or none at all. The difference between Bank’s plight now and what it could have been with timely filing is that now it is confined to a claim against the collateral rather than the bankruptcy estate as a whole.
 
 In re Tamow,
 
 749 F.2d at 466 (7th Cir.1984).