### In re Leon Marlon BASHAM, Debtor.

### Bankruptcy No. 93–20014–2–13.

United States Bankruptcy Court,
W.D. Missouri,
Central Division.

May 16, 1994.

Noel Magee, Columbia, MO, for debtor.

Michael A. Gould, Kansas City, MO, for Green Tree Acceptance.

Rick Fink, Trustee.

FRANK W. KOGER, Chief Judge.

## MEMORANDUM OPINION

### Facts

Leon Basham, the Debtor, filed for Chapter 13 relief under the Bankruptcy Code, 11 U.S.C. § 1301, et seq. (the Code), on January 14, 1993. The Debtor listed only six creditors in Schedules D—F. Two of the claims are scheduled as secured. The Debtor scheduled a debt in the amount of $23,500 to Green Tree Acceptance Corp. (Green Tree) for the purchase of a 1991 Skyline Sabre Mobile Home. The debt was secured by a purchase money security interest (PMSI). The Debtor also listed a debt to Mercantile Bank for $4655 with a corresponding PMSI in a 1987 Ford pickup truck. The Debtor's ex-wife, Penny Dixon, was a co-debtor on both secured debts. The Debtor scheduled four unsecured debts which together totaled approximately $1500.

The Debtor filed a Chapter 13 plan with his petition for relief. The plan proposed to surrender the mobile home and pickup truck in full satisfaction of the secured claims. The plan would last three years, paying the four unsecured creditors 100% of their allowed claims. The monthly plan payments were set at $75.

Pursuant to Local Rule 13.04(A), the Debtor served a copy of the plan summary on all creditors, including Green Tree. The summary contained the following in a pre-printed table:

| Retain lien and pay to value §§ 1325(a) (5)(B)(i) and (ii) | Value of Collateral | Rate of Interest | Monthly Plan Payment |
| --- | --- | --- | --- |
| * Greentree Acceptance | $  surrender | N/A | N/A |
| * Mercantile Bank | $  surrender | N/A | N/A |

(If the collateral is to be surrendered per § 1325(a)(5)(c) so indicate in the value column above.)

The Debtor included a typewritten entry at the bottom of the page:

  * Secured Creditors agree to accept collateral in full satisfaction of their claims.

The plan summary stated that unsecured claims would be paid 100% of their allowed amount.

Prior to plan confirmation, Green Tree moved for relief from the automatic stay and co-debtor stay. This request was granted by the Court. In Green Tree's motion and proposed order, the order which the Court adopted, Green Tree cited the Debtor's proposed surrender of collateral in full satisfac-

tion of Green Tree's claim as a grounds for stay relief.

No objections to the plan were received, and the Court confirmed the plan on February 26, 1993. After plan confirmation, Green Tree foreclosed and sold the mobile home at a foreclosure sale in accordance with state law. Subsequently, Green Tree filed a proof of claim in the unsecured amount of $10,-838.15. The claim represented the remaining deficiency after the mobile home sale proceeds were applied to the Debtor's obligation. The United States Department of Housing and Urban Development (HUD) filed a $9,645.26 unsecured claim for the same mobile home deficiency.

The Debtor did not object to Green Tree's unsecured claim, but objected to HUD's claim. The Chapter 13 Trustee moved to amend the confirmed plan under § 1329(a) to increase plan payments from $75 to $295 because the plan would not amortize within 60 months as required by § 1322(c) with the additional unsecured claims. The Debtor objected to modification, claiming that the collateral was surrendered in full satisfaction of Green Tree's claim as required by the plan. Green Tree responded that its unsecured claim was allowed and is *prima facia* evidence of the claim's amount and validity which should be paid 100% according to plan terms. Green Tree further contends Missouri's Uniform Commercial Code rules of foreclosure governed the collateral surrender, including Green Tree's right to a deficiency claim. *See* V.A.M.S. §§ 400.9–501 to 400.9–505.

### Discussion

Green Tree framed the issue as one of allowance of its unsecured deficiency claim, and it urged the Court to adopt Missouri state rules on this point. Green Tree directed the Court to Missouri's Uniform Commercial Code for support. Further support for this position is found in *In re Claypool*, 122 B.R. 371 (Bankr.W.D.Mo.1991). *In re Claypool* involved a creditor bank's objection to a plan that proposed to surrender collateral in full satisfaction of a debt. The creditor bank argued that the collateral should be sold in a commercially reasonable manner according to Missouri law, and the creditor bank should be allowed to file a deficiency claim. *Id.*

The court agreed and held that a debtor could not surrender collateral in full satisfaction of a debt where the value of the collateral was less than the allowed secured claim. *Id.* at 372. The court further held that such a plan violated § 1325(a)(4) because in a hypothetical Chapter 7 liquidation, if an unsecured deficiency remained after the liquidation sale, the creditor bank would receive a *pro rata* share of the debtor's unencumbered assets based on the deficiency. *Id.* Thus, the court denied plan confirmation. Green Tree adopted *In re Claypool*'s reasoning and urged a similar result.

One key fact distinguishes the case at hand from *In re Claypool;* here, the Chapter 13 plan was confirmed without objection, whereas the *Claypool* creditor objected to the plan prior to its confirmation. Section 1327(a) describes the effects of a confirmed plan:

> [t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

The issue before the Court, then, is the *res judicata* effect of the Debtor's Chapter 13 plan on Green Tree's secured claim. *In re Claypool* never addressed the *res judicata* effect of § 1327. The Court agrees with Judge Federman's reasoning and believes that had Green Tree objected to the plan prior to confirmation, it could have successfully blocked confirmation. However, since this case arose after confirmation, *In re Claypool* is of no assistance in resolving the issue here.

Green Tree does make one argument regarding collateral estoppel, claiming that since it never agreed to accept surrender of the mobile home in full satisfaction of its claim, it cannot be bound by a recitation in the plan to that effect. A fair rendition of the plain language of § 1327(a) belies that position. The plan is binding whether or not the creditor has accepted the plan or has rejected it. *See* 11 U.S.C. § 1327(a). Moreover, a number of courts have held that a creditor who fails to object to a Chapter 13 plan is deemed to have accepted it. *In re Szostek*, 886 F.2d 1405, 1413 (3d Cir.1989);

*In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263, 1266 (10th Cir.1988). Thus, Green Tree's failure to object can bind it to the terms of the plan.

The difficult issue in this case is the apparent conflict between the claims allowance procedures under 11 U.S.C. § 502 and Fed. R.Bankr.P. 3001, 3007, and the binding effect of the Chapter 13 plan. Under § 502 a filed proof of claim is deemed allowed, unless a party in interest objects. A filed proof of claim is *prima facia* evidence of its validity and amount. Fed.R.Bankr.P. 3001(f). Indeed, a number of circuit courts have held that a secured creditor need not file a claim at all; rather, a secured creditor can ignore the bankruptcy proceeding and look to its lien for satisfaction. *In re Tarnow,* 749 F.2d 464, 465 (7th Cir.1984); *In re Simmons,* 765 F.2d 547, 552 (5th Cir.1985).

On the other hand, a Chapter 13 debtor may modify the rights of a secured creditor through the Chapter 13 plan, except a claim secured only by a security interest in the debtor's homestead. 11 U.S.C. § 1322(b)(2). A bankruptcy court must confirm a Chapter 13 plan if: (1) the secured creditor accepted the plan; (2) the value of property to be distributed to the secured creditor is not less than the allowed amount of the secured claim; or (3) the debtor surrenders the property securing the creditor's claim. 11 U.S.C. § 1325(a)(5). As mentioned earlier, a confirmed plan is binding upon the debtor and creditors. 11 U.S.C. § 1327(a).

In the case at hand, Green Tree never objected to the Debtor's plan calling for the surrender of the mobile home "in full satisfaction of [its] claim." Surrender "in full satisfaction of" refers to the satisfaction of the entire debt, and would extinguish any resulting deficiency. *In re Rincon,* 133 B.R. 594, 596 n. 5 (Bankr.N.D.Tex.1991) (contrasting "surrender for value" and "surrender in full satisfaction"). Green Tree filed a deficiency claim after plan confirmation, and the Debtor failed to object to that claim. Under the plan confirmation procedure, Green Tree had no right to a deficiency. Under the claims allowance procedure, Green Tree has an allowed secured claim that is prima facia evidence of its amount and validity. This is the paradox presented in this case.

The Court has found no Eighth Circuit decision, nor Western District case, that addresses this apparent conflict. This Court has previously ruled that a partial surrender of collateral "in lieu of the debt thereon" under a confirmed Chapter 13 plan did not avoid a secured creditor's lien as to the unsurrendered collateral. *See In re Hydorn,* 94 B.R. 608, 614 (Bankr.W.D.Mo.1988). However, this Court noted that the plan did not call for "full satisfaction" of the claim, nor did it specify that the secured creditor's lien on the unsurrendered property was to be avoided. *Id.* Thus, this Court only considered whether the lien was "provided for by the plan" under § 1327(c). *Id.* Since this Court found that the plan did not provide for the lien, the debtor could not invoke § 1327. *Id.* In contrast, the Debtor's plan in the present case specifically provides for the surrender of collateral "in full satisfaction of" Green Tree's claim, and the Court is squarely faced with the § 1327 issue. A number of other circuits have been faced with this issue; however, no uniform approach has emerged. *See, e.g., In re Linkous,* 990 F.2d 160 (4th Cir.1993); *In re Howard,* 972 F.2d 639 (5th Cir.1992); *In re Pence,* 905 F.2d 1107 (7th Cir.1990); *In re Simmons,* 765 F.2d 547, 552 (5th Cir.1985); *In re Tarnow,* 749 F.2d 464, 465 (7th Cir.1984). As with most splits in opinion, there are three approaches, one at each extreme and one in between. Some courts choose the claims process over the plan confirmation process, *see In re Howard,* 972 F.2d at 639; *In re Simmons,* 765 F.2d at 552; some courts choose the chapter 13 plan process over the claims process, *see In re Pence,* 905 F.2d at 1108; and some courts choose a middle-of-the-road approach, *see In re Linkous,* 990 F.2d at 163.

### A.  Approach # 1

Looking first to those courts that choose the claims allowance process over the plan confirmation process, the lead cases are *In re Simmons,* 765 F.2d 547 and *In re Howard,* 972 F.2d 639, from the Fifth Circuit. *In re Simmons* involved a secured creditor whose claim was scheduled by the debtor as unsecured. 765 F.2d at 549. The creditor completed a form entitled "Proof of Claim; Acceptance or Rejection of Plan" in which the

creditor asserted his secured claim, accepted the plan, and added a typewritten objection to his claim being classified as unsecured. *Id.* The bankruptcy court confirmed the plan, stating that it received no objections. *Id.* The Fifth Circuit reversed, finding that a lien passes through bankruptcy unaltered unless the debtor or trustee takes steps to avoid it. *Id.* A secured creditor can ignore the bankruptcy proceeding and look to its lien for satisfaction, unless it has notice that its claim is disputed. *Id.* at 552; *see also In re Tarnow*, 749 F.2d at 465. The court stated that:

> the Code and the Rules clearly impose the burden of placing the claim in dispute on any party in interest desiring to do so by means of filing an objection.

*Id.* at 552. A chapter 13 plan is not a "vehicle through which objections are made" because the plan does not provide the creditor with sufficient notice that the claim is disputed. *Id.* Therefore, the Fifth Circuit concluded that the confirmed plan was not binding as to the secured creditor's claim. *Id.*

The Fifth Circuit went further in *In re Howard*, where the court stated that:

> a confirmed Chapter 13 plan is *res judicata* as to all parties who participate in the confirmation process.

972 F.2d at 641. The court implied that a confirmed Chapter 13 plan is not *res judicata* as to parties who do not participate in plan confirmation. *See id. In re Howard* involved a debtor who disputed a secured creditor's claim and proposed to compromise the claim in a de minimis amount. *Id.* at 640. The secured creditor received no notice of the proposed compromise and did not object to confirmation. *Id.* The Fifth Circuit held that a debtor must file an objection to a secured claim to modify a secured creditor's rights:

> in order to put the creditor on notice that it must participate in the bankruptcy proceedings. A Chapter 13 plan may by its very nature change the terms of payment and otherwise modify the terms of payment and otherwise modify the terms of the debt underlying the lien.

*Id.* at 642. Since the debtor failed to object to the secured creditor's filed claim, the plan could not modify the claim nor act as an objection substitute. *Id.* at 641.

*Simmons* and *Howard* are factually similar because the secured creditors had no notice that their rights would be modified under the plan prior to its confirmation. While neither case explicitly relies on due process requirements,[1] each court's reasoning hinges on the notice element of claims objection. The Fifth Circuit viewed notice of plan confirmation as inadequate notice *per se*; a claim objection is a necessary condition before a secured creditor's rights may be altered through a Chapter 13 plan. *See generally, In re Howard*, 972 F.2d at 641; *In re Simmons*, 765 F.2d at 552.

### B.  Approach # 2

The second approach favors the plan confirmation process over the claims allowance process, and the lead case for this approach is from the Seventh Circuit, *In re Pence*, 905 F.2d 1107. *In re Pence* involved a debtor who proposed a plan in which a secured creditor would receive property pursuant to § 1325(a)(5)(B)(ii) of a value greater than the secured creditor's claim in exchange for a release of the creditor's lien. *Id.* at 1108. The plan was confirmed without objection. *Id.* When it became apparent that the property provided to the secured creditor had a value less than the allowed amount of the creditor's claim, the secured creditor attempted to enforce its lien. *Id.* at 1108–09. The court held that the creditor was bound by the provisions of the confirmed plan. *Id.* at 1110. The court addressed a due process argument, stating that notice of the filing of a Chapter 13 petition was sufficient, in and of itself, to put the creditor on notice that its rights may be altered. *Id.* at 1109. The creditor had an affirmative duty to monitor the proceeding to determine what aspects of the case the creditor may want to challenge. *Id.* The court stated that the creditor:

> was not entitled to stick its head in the sand and pretend it would not lose any

---

1.  The *Howard* court did not reach the due process claim raised by the secured creditor, claim-ing to have decided the case on other grounds. *See* 972 F.2d at 642.

rights by not participating in the proceedings.

*Id.* at 1109.

The Seventh Circuit viewed the notice of filing a Chapter 13 petition as sufficient notice *per se.* The reasoning adopted by the Seventh Circuit is one of inquiry notice. Notice of the filing of a petition imposes on the secured creditor a duty to inquire about the alteration of its rights under any proposed Chapter 13 plan. *See generally id.*

### C. Approach # 3

The third approach, the middle-of-the-road approach, does not attach *per se* sufficiency to the notice of the filing of a petition, nor does it preclude the possibility that notice of plan confirmation is sufficient notice. The approach looks to the contents of the notice to determine if it is:

> reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Hanover Bank & Trust,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted). The middle-of-the-road approach was advanced by the Fourth Circuit in *In re Linkous,* 990 F.2d 160. In *Linkous,* the debtor proposed a plan in which a secured creditor was treated as partially secured. *Id.* at 161. The plan summary sent to creditors indicated that the creditor would be paid under the plan, and listed both the number and amount of payments. *Id.* The plan did not mention that the secured creditor's claim was to be treated as partially secured. *Id.* The plan was confirmed without objection, but the creditor later challenged the plan on due process grounds, claiming that the plan summary was inadequate notice that its collateral would be valued at the confirmation hearing. *Id.* at 161–62. A majority of the Fourth Circuit concluded that Rule 3012 required specific notice that a § 506 valuation hearing would be conducted. *Id.* at 163. The majority found that the notice sent, which did not include specific notice of valuation, failed the fundamental requirements of due process because it was not "reasonably calculated" to apprise interested parties. *Id.*

The dissent also applied *Mullane,* finding that the plan summary which listed both the number and amount of payments to be made to the secured creditor was sufficient to apprise that creditor that its rights would be modified. *Id.* at 165 (J. Chapman, dissenting). The dissent noted Rule 3012's requirement of specific notice of a § 506 valuation hearing, but found that such notice was not required when a creditor files its proof of claim after plan confirmation. *Id.* (J. Chapman, dissenting). The dissent explained that, as a practical matter, it is not possible to ascertain whether or not a plan modifies a secured creditor's rights until that creditor files a claim showing a collateral value different from the value scheduled by the debtor. *Id.* (J. Chapman, dissenting).

### D.

The common theme through all three approaches is that of notice. Did the creditor receive adequate notice that its rights were to be modified under the plan? Each approach answers the question differently, but expresses a common concern for a creditor's due process rights.

The Court is troubled by the Fifth Circuit's conclusion in *In re Howard* that a confirmed plan is only binding on creditors who participate in the confirmation process. *See* 972 F.2d at 641. This conclusion seems contrary to the language of § 1327(a) which states that a confirmed plan is binding on all creditors whether or not they file claims or plan objections. In addition, a rule requiring a claim objection as a prerequisite to a modification of secured creditor rights may, as a practical matter, be unworkable when a creditor does not file a proof of claim before plan confirmation. There would be nothing for a debtor to object to, and it would not be possible to determine whether the creditor will place a different value on its collateral than the debtor's value. *Compare In re Linkous,* 990 F.2d at 165 (J. Chapman, dissenting). Therefore, the Court cannot conclude that a claim objection is the exclusive means of notice to a secured creditor that its rights are to be modified.

Nor does the Court adopt the approach found in *In re Pence,* 905 F.2d at 1108. A

*per se* rule that notice of the filing of the petition is sufficient to apprise a secured creditor that its rights are to be modified may be a workable approach when the creditors are sophisticated lenders who are familiar with the bankruptcy process, but such a rule would be unduly harsh to unsophisticated creditors and may not accord such creditors due process.

The Court finds that the third approach is the best approach. Looking to the contents of the notice to determine if the notice is reasonably calculated, under the circumstances, to apprise interested parties that their rights may be modified, is a flexible approach that encompasses the totality of circumstances presented in each case. Such approach allows the Court to consider a creditor's sophistication, the amount of their involvement in the bankruptcy proceeding, as well as, that creditor's reliance on the claims allowance procedures as demonstrated by a proof of claim filed before plan confirmation.

Applying the third approach to the case at hand, Green Tree had sufficient notice of the plan's treatment of its claim to be bound by the plan's terms. Green Tree is a sophisticated lender that was aware that its rights could be modified in a Chapter 13 proceeding. Green Tree had notice of the filing of the petition. Green Tree did rely exclusively on the claims allowance procedure because it did not file its claim until after the plan was confirmed. The plan summary received by Green Tree plainly stated that the mobile home would be surrendered in full satisfaction of its claim. Green Tree relied on this plan term in its motion to lift stay. This creditor had adequate opportunity to challenge the proposed plan prior to its confirmation, and it is disingenuous for Green Tree to now challenge that plan. Green Tree cannot be an ostrich. By failing to object to plan confirmation, Green Tree lost its right to contest the plan.

### Conclusion

Based on the above discussion, the Debtor's Objection to the Chapter 13 Trustee's Motion to Amend is hereby SUSTAINED, the Trustees motion is consequently DENIED. It is further ORDERED, ADJUDGED and DECREED that Green Tree's unsecured claim in the amount of $10,838.15 has been satisfied by the Debtor's surrender of collateral. The Debtor's Objection to HUD's claim is also SUSTAINED, and that claim is DISALLOWED because that claim is a duplicate of Green Tree's claim which has been satisfied.

SO ORDERED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.