OPINION
{¶ 1} These two related appeals involve two foreclosure suits that were consolidated in the Mahoning County Court of Common Pleas. The docket entries on these cases take up more than 35 pages. The dispute arose over a single piece of property in Youngstown appraised at $10,200. Appellee Joseph Davilla, Sr., (hereinafter "Davilla") filed the first foreclosure action against Appellant Donald A. Harman ("Harman") in 1997 to collect, at least in part, on a $100,000 judgment lien against Harman. Harman used a variety of methods to avoid paying this judgment, including transferring the property to his sister, Nancy L. Sparks, as well as filing for bankruptcy. The bankruptcy court eventually ruled that the $100,000 judgment was properly fixed to the property and survived bankruptcy. Harman reacquired the property in 2005. Davilla tried a number of times to have the property sold at a sheriffs sale, but no one has yet purchased it. The current appeal involves the most recent order to sell the property at sheriffs sale.
 {¶ 2} In August of 2005, Appellant American Tax Funding, LLC, (hereinafter "ATF") filed a separate foreclosure complaint against the property in an attempt to collect on a delinquent property tax certificate that it had purchased from the Mahoning County Treasurer for tax year 1987. The two cases were consolidated, and the trial court ruled that the $100,000 judgment lien is still attached to the property, despite the bankruptcy proceedings and despite the various transfers of title to the property. The court found that the Mahoning County Treasurer stipulated in Davilla's foreclosure action that there were no outstanding property taxes on the property. The court also found that the Mahoning County Treasurer did not provide *Page 2 
an estimate of any future taxes that would be due at the time the property would be transferred to the high bidder in Davilla's foreclosure action. Based on these two findings, the court determined that the ATF tax certificate for Mahoning County property taxes from 1987 was subordinate to Davilla's lien. The court noted that Harman's bankruptcy relieved him of any personal obligation to pay taxes on the property, but that the property retained in rem liability for any attached liens. The court marshaled the liens, giving Davilla's lien priority, and ordered the property to be sold.
 {¶ 3} The trial court judgment is correct in all its material conclusions and rulings. In the first appeal, Harman is continuing to argue about issues regarding the validity of Davilla's $100,000 judgment and whether it was discharged in bankruptcy, but these issues were resolved long ago by both this Court and the bankruptcy court. Harman is also making assumptions about his sister's bankruptcy case that are not supported by the record or by law. In the second appeal, ATF asserts that property tax liens have priority over other liens, including judgment liens. Although that is generally true, such a rule cannot be applied when the county treasurer stipulates that no taxes are owed. The trial court was correct in giving Davilla's lien priority in the sheriff's sale. The judgment of the trial court is affirmed.
 HISTORY OF THE CASE {¶ 4} On September 10, 1997, Joseph Davilla, Sr. filed a suit to enforce a $100,000 judgment lien against Donald A. Harman by way of foreclosure on Harman's home at 64 N. Montgomery Avenue in Youngstown. This was given Case No. 97 CV 2657 in the Mahoning County Court of Common Pleas. The property was *Page 3 
appraised at $10,200. Mr. Harman has represented himself pro se throughout the course of the foreclosure actions and continues to do so on appeal.
 {¶ 5} One of the defendants in the foreclosure actions was the Mahoning County Treasurer, who filed an answer to the complaint on October 6, 1997.
 {¶ 6} Davilla filed an amended complaint on April 28, 1999, and the Mahoning County Treasurer filed an answer to the amended complaint on May 13, 1999.
 {¶ 7} While Mr. Davilla's foreclosure suit was being litigated, Harman transferred title of the property to his sister, Nancy L. Sparks. Under the doctrine of lis pendens, R.C. 2703.26, Nancy L. Sparks took the property subject to Davilla's foreclosure action, and this has not been questioned during the course of the two underlying cases.
 {¶ 8} Summary judgment on the foreclosure action was granted to Davilla on March 1, 2000, and this judgment was upheld on appeal in May, 2001. Davilla v. Harman (May 21, 2001), 7th Dist. No. 00 C.A. 64. While the appeal was pending, Harman declared bankruptcy, and he received a Chapter 7 discharge of debt on February 12, 2001. At the time Harman filed for bankruptcy, the property at 64 Montgomery Street was titled in Nancy Spark's name. Nancy Sparks declared bankruptcy in 2003, while the property was still in her name. Various bankruptcy decisions in both bankruptcy cases ruled that the $100,000 judgment lien became fixed to the property prior to the bankruptcy proceedings and remained as a lien on the property during and after the bankruptcy process. (7/31/03 Bankruptcy J.E.; 9/20/04 Bankruptcy J.E.) *Page 4 
 {¶ 9} Due to a variety of delays, including automatic stays from the bankruptcy cases, confusion over who had title to the property, other stays of execution issued by the trial court, and lack of interest in the property, prior attempts to sell the property have failed. The property was most recently offered for sale on April 27, 2004, but no bids were received.
 {¶ 10} Davilla filed a motion with the court on September 17, 2004, to allow another sheriffs sale of the property. On September 27, 2004, Harman requested another stay of the sheriffs sale. At the time Harman filed the motion he was not the owner of the property, but he reacquired the property on August 16, 2005. The stay was granted on September 27, 2005.
 {¶ 11} On August 26, 2005, ATF filed a foreclosure suit against the same property. This was given Case No. 2005 CV 3159. ATF had previously purchased from the Mahoning County Treasurer, pursuant to R.C. 5721.30
et seq., a tax certificate for delinquent property taxes on Harman's property for the year 1987 only, and it was this tax certificate that ATF was attempting to enforce through foreclosure. The tax certificate listed the value of the property tax lien as $4,424.45. ATF purchased the tax certificate on April 30, 2004. ATF was apparently unaware of Davilla's pending foreclosure action when it filed its own foreclosure complaint.
 {¶ 12} ATF filed a motion for summary judgment on November 9, 2005, on the presumptive authority of the tax certificate and the statutory framework, such as R.C. 5721.31, allowing foreclosure on property tax certificates. On November 14, 2005, Harman filed a motion for summary judgment in the ATF case. Harman argued, without presenting evidence, that the tax debt was discharged in his bankruptcy *Page 5 
case. On January 19, 2006, ATF filed a supplement to its motion. Attached to the supplement is the United States Bankruptcy Appellate Panel for the Sixth Circuit decision affirming that Mr. Davilla's $100,000 judgment lien against the property was not extinguished in Harman's bankruptcy discharge. In re Harman (C.A.6, 2005), 326 B.R. 901. This Sixth Circuit case does not specifically discuss tax liens, but does discuss some of the reasons why certain in rem liens may survive bankruptcy.
 {¶ 13} Harman supplemented his motion for summary judgment on January 25, 2006. In this supplement, Harman argued that the Mahoning County Treasurer was given an opportunity to assert any outstanding tax liens during the bankruptcy proceedings but failed to do so. Again, there was no evidence submitted to support this proposition, except for a single unverified piece of paper purporting to show that the county treasurer was listed along with many other people as having received notice of some unspecified proceeding.
 {¶ 14} On January 18, 2006, the judge in Case No. 97 CV 2657 became aware of the ATF foreclosure action, and on March 14, 2006, the two foreclosure cases were consolidated under Case No. 97 CV 2657.
 {¶ 15} On May 18, 2006, the trial court ruled on a number of outstanding motions and issues. The court ruled that Davilla's $100,000 judgment lien was still attached to the property, despite the bankruptcy proceedings and despite the various transfers of title to the property. The court ruled that the Mahoning County Treasurer stipulated in Davilla's foreclosure action that there were no outstanding property taxes on the property. The court ruled that the ATF tax certificate for taxes was subordinate to Davilla's lien because of the stipulation by the Mahoning County *Page 6 
Treasurer that there were no taxes due and owing on the property. The court noted that Harman's bankruptcy relieved him of any personal obligation to pay taxes on the property, but that the property retained in rem tax liability. The court marshaled the liens, giving Davilla's lien priority, and ordered the property to be sold.
 {¶ 16} On June 12, 2006, ATF filed an appeal of the May 18, 2006, judgment entry. This is designated as Appeal No. 06 MA 89. On June 16, 2006, Harman filed an appeal of the May 18, 2006, judgment entry. This is designated as Appeal No. 06 MA 91. Since the facts in both cases overlap almost entirely, we have consolidated the appeals.
 {¶ 17} ATF and Davilla have filed briefs in Appeal No. 06 MA 89. Only Harman has filed a brief in Appeal No. 06 MA 91. The two appeals will be treated in reverse order.
 FINAL APPEALABLE ORDER STATUS {¶ 18} A judgment entry ordering a foreclosure sale is a final, appealable order pursuant to R.C. 2505.02(B) if it resolves all remaining issues involved in the foreclosure. This includes the questions of outstanding liens, including what other liens must be marshaled before distribution is ordered, the priority of any such liens, and the amounts that are due the various claimants. Second Nat.Bank of Warren v. Walling, 7th Dist. No. 01-C.A.-62, 2002-Ohio-3852, ¶ 18. The May 18, 2006, judgment entry covers all these issues and is final and appealable. *Page 7 
 ISSUES INVOLVED IN APPEAL NO. 06-MA-91 ASSIGNMENT OF ERROR NO. 1 {¶ 19} "THE VISITING JUDGE ALLOWED THIRTY (30) DAYS TO RESPOND TO AN OFFER TO SETTLE CASE FOR $3,000 THE APPELLATE WAS INFORMED BY OPOSSING COUNSEL TO PUT IT IN WRITING. [sic]"
 {¶ 20} It is unclear what Harman is asserting here, and there is no reference to any specific item in the record that might clarify his argument. Harman seems to be arguing that even though Davilla's attorney did not properly pursue a settlement opportunity, Davilla himself should have personally told Harman that a settlement had or had not been reached. Once a party retains counsel, that party speaks through its counsel. Swander Ditch Landowners' Assn. v. Joint Bd. Huron SenecaCty. Commrs. (1990), 51 Ohio St.3d 131, 134, 554 N.E.2d 1324. A party cannot be forced by an opposing party to act without the use of its legal counsel. Furthermore, a party cannot be forced to enter a settlement agreement, because the very essence of a settlement is a voluntary assent to the terms of settlement, not a forced acquiescence. "[A] court may not force an agreement upon the parties." Rulli v. FanCo. (1997), 79 Ohio St.3d 374, 377, 683 N.E.2d 337. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 2 {¶ 21} "THE MAHONING COUNTY TREASURER CANNOT SALE OR OFFER TO SALE REAL ESTATE TAXES THAT HAVE ALREADY BEEN PROPERLY DISCHARGED IN A FEDERAL BANKRUPTCY PROCEEDING. [sic]" *Page 8 
 {¶ 22} Harman is asserting, without any support from the record, that taxes on the property located at 64 Montgomery Street were discharged in the bankruptcy case of Nancy Sparks because the Mahoning County Treasurer did not file a proof of claim. Appellant contends that summary judgment should have been granted to him on the issue of the validity of the ATF tax certificate.
 {¶ 23} A trial court's ruling on a motion for summary judgment is reviewed de novo on appeal, using the same standards as the trial court as set forth in Civ.R. 56(C). Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party.Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,4 O.O.3d 466, 364 N.E.2d 267.
 {¶ 24} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim." (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 296,662 N.E.2d 264.
 {¶ 25} Appellant's entire evidentiary basis for his contention that the tax lien was discharged in bankruptcy is an unverified piece of paper that states that the Mahoning County Treasurer, along with numerous other entities, was notified about *Page 9 
some unspecified event. (1/25/06 Memorandum in Support of Summary Judgment, attachment.) The piece of paper was not issued by a court, but rather, by Enterprise Systems Inc. There is no affidavit from Harman incorporating this document by reference as evidence to support his motion for summary judgment, as is required by Civ.R. 56(E). The document itself reveals little except that a number of persons and entities were notified of something. There is nothing in the record indicating that Nancy Sparks received a discharge in bankruptcy, or what was included in that alleged discharge, or if liens on the property survived the bankruptcy even though her personal liability to pay might have been discharged. Basically, there is no evidence that even begins to support Appellant's argument.
 {¶ 26} A lien for property taxes arises automatically as a matter of law and attaches to the property on January 1st of each year. R.C.323.11. This automatic attachment of property tax liens is recognized in bankruptcy. In re McConnaughey (Bankr.Ct. .S.D.Ohio 1992) 147 B.R. 433. Tax liens generally survive bankruptcy: "the general rule [is] that liens pass through bankruptcy unaffected." Cen-Pen Corp. v. Hanson
(C.A.4 1995), 58 F.3d 89, 92. Furthermore, the failure of the state to file a proof of claim does not void a tax lien. In re Tarnow (C.A.7, 1984), 749 F.2d 464, 467; In re Hydorn (Bankr.W.D.Mo.1988), 94 B.R. 608,613.
 {¶ 27} Without some evidence and some type of cogent legal argument, there was no reason for the trial court to decide that any property taxes were discharged in bankruptcy, and there is no reason for us to reverse the trial court's decision regarding Appellant's motion for summary judgment. This assignment of error is overruled. *Page 10 
 ASSIGNMENT OF ERROR NO. 3 {¶ 28} "SINCE THE PERSONAL DEBT HAS BEEN LEGALLY DISCHARGED THERE CAN BE NO LONGER A FORCEFUL FORECLOSURE OF A REAL ESTATE THAT BELONGS TO THE APPELLATE HARMAN. [sic]"
 {¶ 29} Harman is arguing that not only was the tax debt discharged, but that his $100,000 debt was also discharged in bankruptcy. Appellant has been attempting to relitigate this issue for some time now. In this Court's earlier Davilla v. Harman Opinion, it was noted that the $100,000 judgment was imposed by court judgment on October 11, 1996, and that Appellant did not appeal that judgment. This Court affirmed the validity of the $100,000 judgment as a lien on Appellant's property. Appellant subsequently tried to have the lien declared invalid by declaring bankruptcy. Various bankruptcy rulings determined that Appellant had no standing to challenge the lien because Appellant had no interest in the property after he transferred the property to Nancy Sparks in 1998. The case was appealed to the United States Bankruptcy Appellate Panel for the Sixth Circuit, which affirmed that Mr. Davilla's $100,000 judgment lien against the property was not extinguished in Harman's bankruptcy discharge and remained as a lien on the property.In re Harman (C.A.6, 2005), 326 B.R. 901. Under the doctrine of res judicata: "[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, paragraph one of the syllabus. Res judicata applies to bar parties, or those in privity with them, from relitigating the same issue in different lawsuits. Kirkhart v. *Page 11 Keiper, 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, ¶ 8. Thus, res judicata bars Appellant from relitigating the fact that his $100,000 judgment is a valid lien on the property located at 64 Montgomery Street in Youngstown, and that the lien survived his bankruptcy case.
 ISSUES INVOLVED IN APPEAL NO. 06 MA 89 ASSIGNMENT OF ERROR {¶ 30} "THE TRIAL COURT ERRED BY FINDING THAT DAVILLA'S JUDGMENT LIEN HAS PRIORITY OVER ATF'S LIEN FOR DELINQUENT REAL ESTATE TAXES."
 {¶ 31} ATF purchased a tax certificate in 2004 from the Mahoning County Treasurer for delinquent taxes from 1987 on property located at 64 Montgomery Street in Youngstown. ATF contends that it is the assignee of the rights of the Mahoning County Treasurer for these delinquent taxes pursuant to R.C. 5721.35. Appellant's argument is that tax liens for delinquent property taxes always take priority over other liens when property is sold in a foreclosure action. Appellant bases its argument primarily on R.C. 5721.10, which states:
 {¶ 32} "Except as otherwise provided under sections 5721.30 to 5721.43
of the Revised Code, the state shall have the first lien on the landsand lots described in the delinquent land list, for the amount of taxes, assessments, interest, and penalty charged prior to the delivery of such list. If the taxes have not been paid for one year after having been certified as delinquent, the state shall institute foreclosure proceedings in the manner provided by sections 5721.01 to 5721.28 of the Revised Code, unless a tax certificate respecting that property has been sold under section *Page 12 5721.32 or 5721.33 of the Revised Code, or unless such taxes are the subject of a valid delinquent tax contract under section 323.31 of the Revised Code * * *." (Emphasis added.)
 {¶ 33} There really is no question that, based on R.C. 5721.10, the state has the right to assert a tax lien as the first and best lien in a sheriffs sale. Quill v. Richardson (Jan. 24, 1996), 2nd Dist. No. 15194;Suggs v. McCool (Feb. 28, 2994), 12th Dist. No. CA93-05-009. The more pertinent question in this appeal, though, is whether events occurred in Davilla's foreclosure action which affected the rights of the Mahoning County Treasurer to assert a lien for delinquent taxes, and by extension, which affected the rights of ATF as the assignee of the right to collect delinquent taxes from 1987.
 {¶ 34} In this appeal, ATF is challenging the trial court's decision that the Mahoning County Treasurer failed to exercise its rights to claim accrued taxes under R.C. 323.28. When a county treasurer forecloses on property due to delinquent property taxes, the court of common pleas is required to make a finding concerning the delinquent taxes pursuant to R.C. 323.28:
 {¶ 35} "(A) A finding shall be entered in a proceeding under section323.25 of the Revised Code for taxes, assessments, penalties, interest, and charges due and payable at the time the deed of real property sold under this section is transferred to the purchaser, plus the cost of the proceeding. For purposes of determining such amount, the county treasurer may estimate the amount of taxes, assessments, interest, penalties, and costs that will be payable at the time the deed of the property is transferred to the purchaser." *Page 13 
 {¶ 36} ATF argues that this statute, relied upon by the trial court, was not applicable to Davilla's foreclosure action. ATF first argues that R.C. 323.28 must be used when the county treasurer files a foreclosure action under R.C. 323.25. It is clear from the record that the county treasurer did not file a foreclosure action. It was Davilla, not the county treasurer, who filed a foreclosure complaint to execute on a judgment lien. The Mahoning County Treasurer was brought into the action as a defendant. Therefore, R.C. 323.28 does not seem to be relevant to those issues being resolved by the trial court.
 {¶ 37} Appellant's second argument is that even if R.C. 323.28
applies, it could not change the priority of a tax lien, but could, only provide a means for distributing the proceeds of the sheriffs sale. Since property taxes may continue to accrue while the sheriffs sale is pending, R.C. 323.28 gives the county treasurer the opportunity to estimate what the final taxes will be by the time the property is actually transferred after the sale. ATF contends that R.C. 323.28(C) provides the procedure to be followed depending on whether the estimate is too high or too low, and is not a procedure for changing the priority of liens on the property.
 {¶ 38} ATF contends that the more appropriate statute is R.C. 323.47, which states:
 {¶ 39} "If * * * real estate is sold at judicial sale * * * the court shall order that the taxes, penalties, and assessments then due and payable, and interest thereon, that are or will be a lien on such land or real estate at the time the deed is transferred following the sale, be discharged out of the proceeds of such sale or election. For purposes of determining such amount, the county treasurer may estimate the amount *Page 14 
of taxes, assessments, interest, and penalties that will be payable at the time the deed of the property is transferred to the purchaser."
 {¶ 40} This statute makes it clear that the county treasurer may, at its discretion, estimate the taxes that will be payable at the projected date that the property will be transferred.
 {¶ 41} According to ATF, nothing in R.C. 323.28 or 323.47 changes the priority of the tax lien. ATF cites Twin Lakes Resorts, Inc. v. ThousandAdventures of Ohio, Inc. (Dec. 18, 1997), 3rd Dist. No. 2-97-16, for the general principle that "[w]hen unpaid taxes exist on a parcel of property, despite the presence of other creditors, the first lienholder is the state." ATF does not cite any other caselaw to support its argument.
 {¶ 42} ATF's argument seems to miss the main point that Davilla is asserting, which is that the Mahoning County Treasurer stipulated in Davilla's foreclosure action that there were no property taxes due and owing at the time Davilla attempted to foreclose on the property to collect his $100,000 judgment lien. If no taxes were due when Davilla first attempted to foreclose on the property in 1997, then it is unclear how ATF could be asserting a claim for unpaid taxes that accrued in 1987. In fact, R.C. 5721.34(A) states that:
 {¶ 43} "A county treasurer shall not sell any tax certificate respecting a parcel of delinquent land upon which the full amount of delinquent taxes, assessments, penalties, interest, charges, and costs then due and payable have been paid, or with respect to which a valid delinquent tax contract under section 323.31 of the Revised *Page 15 
Code to pay that amount has been entered into, prior to the sale of the certificate by the county treasurer. A certificate sold in violation of this section is void."
 {¶ 44} When Davilla filed its foreclosure action in 1997, it was the Mahoning County Treasurer, not ATF, who held the right to assert the tax lien, and it was the Mahoning County Treasurer who stipulated that there were no taxes. When ATF became the assignee of a tax certificate from the Mahoning County Treasurer in 2004, it could not obtain more rights than were held by the Mahoning County Treasurer, the assignor. InterIns. Exchange of the Chicago Motor Club v. Wagstaff (1945),144 Ohio St. 457, 460, 30 O.O. 44, 59 N.E.2d 373. It is undeniably true that more property taxes have accrued since Davilla filed his foreclosure action, and the Mahoning County Treasurer could have estimated those taxes as part of the foreclosure and apparently did not. Whether the Mahoning County Treasurer did or did not estimate these future taxes is largely irrelevant, though, because ATF's tax certificate is for the year 1987, and represents past property taxes, not current or future taxes. When the Mahoning County Treasurer stipulated that there were no delinquent taxes, it necessarily included taxes for the year 1987, which was ten years before Davilla filed his foreclosure suit.
 {¶ 45} We note that neither party refers to the place in the record where the Mahoning County Treasurer stipulated that there were no taxes due and owing. It apparently occurred sometime after the Mahoning County Treasurer filed its answer to Davilla's amended complaint in 1999, because in that answer the treasurer asserts that there was a property tax lien. We recognize that there are more than seven years of litigation that occurred after the filing of this answer. There were numerous *Page 16 
hearings, but no transcripts of these hearings are part of the record. There are a number of documents missing from the record, including a document that is listed on the docketing summary sheet as a release of mortgage or lien filed by the Mahoning County Treasurer on June 1, 2000, prior to the first sheriffs sale. It is not clear if this is the document on which the trial court relied when finding a stipulation that there were no taxes due and owing on the property.
 {¶ 46} Whether or not this document is the point in the record where the stipulation occurred, it is ATF's responsibility to indicate the parts of the record that establish reversible error on appeal. The trial court entry now on appeal specifically states that the Mahoning County Treasurer stipulated that all taxes were current. ATF has not presented any challenge to this part of the trial court's determination, and ATF's argument on appeal does not even address the trial court's finding. Since ATF is the party charged with establishing error on appeal based on evidence in the record, ATF was required to point to something in the record to show that the trial court was wrong. ATF failed in this requirement, and so we must rely on the presumption of regularity of the lower court proceedings and affirm the judgment. Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218,400 N.E.2d 384.
 {¶ 47} In conclusion, Donald Harman's three assignments of error are overruled. Res judicata prevents him from relitigating the $100,000 judgment against him, and he has failed to provide any support for his conclusion that the tax lien was discharged in bankruptcy or that there was some type of settlement agreement that prevented the trial court from rendering a judgment. ATF has failed to show that the *Page 17 
trial court erred when it concluded that there were no overdue property taxes on the property based on a stipulation by the Mahoning County Treasurer. Since ATF derived its right to collect overdue property taxes from the rights held by the Mahoning County Treasurer, ATF cannot assert that it has a priority lien after the county treasurer has already stipulated that there is no lien. ATF's assignment of error is also overruled. The judgment of the trial court is affirmed in both appeals.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1